**Panos Lagos, Esq. / SBN 61821**
**LAW OFFICES OF PANOS LAGOS**
5032 Woodminster Lane
Oakland, CA 94602
Tel. (510) 530-4078
Fax (510) 530-4725
e-mail: panos@panoslagoslaw.com

Attorney for Plaintiff,
HOA PHAN

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA (OAKLAND DIVISION)

| | |
|---|---|
| In re | Case No.: 19-42915 CN 13 |
| RHAINELL A. MADRONA, aka JAFFA CITY CAFE, and ARGENT M. MADRONA, aka ARGENT EMPHILIA MONOLAKIS, | CHAPTER 13<br><br>Judge: Charles Novak |
| Debtors, | |
| HOA PHA, | Adversary Proceeding No.: _____ |
| Plaintiff, | COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF CERTAIN DEBT |
| v. | |
| RHAINELL A. MADRONA, aka JAFFA CITY CAFE, and ARGENT M. MADRONA, aka ARGENT EMPHILIA MONOLAKIS, | **JURY TRIAL DEMANDED** |
| Defendants, | |

Plaintiff, HOA PHAN, incorrectly named herein as HOA KHAN, hereby alleges a

complaint against Defendants RHAINELL A. MADRONA, aka JAFFA CITY CAFE, and

ARGENT M. MADRONA, aka ARGENT EMPHILIA MONOLAKIS as follows:

1. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1).

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

3. Plaintiff is a Judgment Creditor and former employee of Defendants.

///

4. Defendants RHAINELL A. MADRONA, aka JAFFA CITY CAFE, and ARGENT M. MADRONA, aka ARGENT EMPHILIA MONOLAKIS, are individuals and husband and wife and are Judgment Debtors is this Chapter 13 bankruptcy case, and have an address at 3109 Pine Street, Antioch, California, 94509.

5. At all relevant times hereto, the Defendant RHAINELL A. MADRONA operated a coffee shop/sandwich business known as JAFFA CITY CAFE and was an active participant in its management while married to ARGENT M. MADRONA, aka ARGENT EMPHILIA MONOLAKIS. While doing so, RHAINELL A. MADRONA was a full-time employee of United Airlines, Inc.

6. Defendant, RHAINELL A. MADRONA, at all material times, did business in the State of California and was an "employer" of Plaintiff under California law.

7. Plaintiff HOA PHAN, incorrectly named herein as HOA KHAN ("PHAN"), worked as an employee of Defendants performing cooking services. PHAN was employed by Defendants for the period approximately between September 19, 2012 through February 8, 2015. On May 11, 2015, PHAN filed an initial claim with the Office of the Labor Commissioner of the State of California alleging violations of California wage and hour laws by Defendants.[1] The matter went to hearing on June 28, 2016 as Case No. 11-47854EK, and on August 25, 2016, the Hearing Officer issued the Order, Decision, or Award of the Labor Commissioner ("the PHAN Order"). The PHAN Order became final on October 24, 2016. Judgment in conformity with the PHAN Order was entered in the Superior Court of California, County of San Mateo (Case No.: 16CIV03008) on December 27, 2016, and subsequently amended on August 5, 2019 and September 23, 2019 ("the PHAN Judgment"). The PHAN Judgment entered in the amount $74,429.21 lies against the following defendants:

///
///
///

---

[1] Not including ARGENT M. MADRONA, aka ARGENT EMPHILIA MONOLAKIS.

**Jaffa City Cafe, a general partnership**;

**Rhainell Madrona**,

    aka rhainell-alumism; madrona,

    aka rhainell A. Madrona,

    aka Rhainell Alumism Madrona,

    aka Rhinell Madrona,

    individually and as a general partner of Jaffa City Cafe;

**Robert Madrona**,

    aka robert-alumism; madrona,

    aka Robert Alumism Madrona,

    individually and as a general partner of Jaffa City Cafe, and

    Robert Madrona, individually and dba City Cafe; and,

**Delia M. Madrona**,

    aka delia-marron; madrona,

    aka Delia Marron Madrona,

    individually and as a general partner of Jaffa City Cafe, and

    Delia Madrona, individually and dba City Cafe.

A true and correct copy of the PHAN Judgment is attached to this Complaint and incorporated herein by reference as **Exhibit A1-A3**. A true and correct copy of the PHAN Order issued by the Labor Commissioner is attached to this Complaint and incorporated herein by reference as **Exhibit B**.

8. The PHAN Judgment, **Exhibit A1-A3**, is entitled to the full faith and credit of the United States as final judgments of a court of the State of California. The PHAN Order, **Exhibit B**, is entitled to the full faith and credit of the United States as a final determination of an agency of the government of the State of California charged with making such determinations as to application of California wage and hour laws. All matters found, concluded, ordered, adjudged, and/or decreed as stated in **Exhibit A1-A3** and **Exhibit B** against Defendants are entitled to deference and to be accepted by

this Court. The merits of **Exhibit A1-A3** and **Exhibit B** are barred from relitigation in this Court by the doctrines of claim preclusion and issue preclusion, laches, waiver and estoppel, and other equitable doctrines.

9. **Exhibit A1-A3** and **Exhibit B** establish that Defendants violated numerous provisions of the California Labor Code and Wage Orders of the California Industrial Welfare Commissioner. **Exhibit A1-A3** and **Exhibit B** establish, among other things, that:

    a. PHAN, having worked as a cook for the previous owners, Defendants, after purchasing the coffee shop operation, initially offered to continue PHAN'S employment at the rate of $12.00 per hour (**Exhibit B**, 2:5-11) but, within a week of ownership, changed PHAN'S compensation to a fixed salary of $1,500.00 per month, which was always paid in cash with neither party keeping track or record of amounts paid to PHAN (**Exhibit B**, 2:9-14). Knowing that PHAN worked from 6:00 a.m. to 8:30 p.m. seven days a week (**Exhibit B**, 2:18-19).

    b. PHAN always received payments in cash from Defendants and neither party kept any record of the amounts paid to PHAN (**Exhibit B**, 2:12-14).

    c. Defendants falsely denied any employment relationship with PHAN (**Exhibit B**, 4:13). Defendants falsely contended that PHAN spent over two years and upwards of 12 to 16 hours per week drinking coffee and using their computers to the point where Defendants pitied him and offered and, in fact, did transport and pay for registration fees for PHAN to attend a food safety course specifically designed for "new owners" which was required by the City of all people handling food served to the public in City (Colma) (**Exhibit B**, 8:17-9:3).

    d. Defendants falsely contended that PHAN was a customer and not an employee (**Exhibit B**, 8:16).

///

e. Defendants acknowledged they knew PHAN as a customer at the cafe where he purchased coffee and used Defendants' computers (**Exhibit B**, 5:18-19) but denied that PHAN ever worked at the cafe (**Exhibit B**, 5:19-20; **Exhibit B**, 9:3-12).

f. Defendants have individual liability for unpaid wages owed to PHAN (**Exhibit B**, 9:9-19; **Exhibit B**, 11:13-15).

g. Defendants willfully failed to pay PHAN the minimum wage required by law (**Exhibit B**, 11:16-24; **Exhibit B**, 12:12-15).

h. Defendants willfully failed to pay PHAN overtime pay required under Labor Code § 1815 for all hours worked beyond 40 in a work week and/or 8 hours in a workday (**Exhibit B**, 12:6-8; **Exhibit B**, 12:17-18).

i. Defendants willfully violated California Labor Code §§ 202, 203, which require that upon an employee's termination of employment, earned wages of that employee must be paid in full not later than 72 hours thereafter and that Defendants' failure to so pay all of PHAN'S final wages was willful within the meaning of Labor Code § 203 (**Exhibit B**, 14:1-18).

**Exhibit A1-A3** and **Exhibit B** establish that Defendants' debts to PHAN are non-dischargeable under §§ 523(a)(2), (4), and (6) of the Bankruptcy Code.

10. Defendants initially offered to continue PHAN'S employment at the rate of $12.00 per hour

11. At all times mentioned herein, Defendants had the money to pay PHAN in compliance with the law but chose not to do so and, instead, purchased personal and/or real property to benefit themselves at PHAN'S expense.

12. PHAN was not paid overtime as required under Labor Code § 1815 for all hours worked beyond 40 in a work week and/or 8 hours in a workday.

13. California Labor Code § 226 requires the employer to provide each employee with an accurate itemized wage statement showing, among other things, all hours worked and the name and address of the legal entity that is the employer. Failure to provide this

accurate itemized statement allows the employee to collect damages, seek injunctive relief and recover penalties. Defendants failed to comply with Labor Code § 226.

14. Defendants committed unlawful acts as defined by California Business & Professions Code § 17200. Defendants engaged in unlawful and unfair business practices including, but not limited to, violations of:

    a. California Industrial Welfare Commission Order No. 5-2001, section 3 (overtime compensation);

    b. Labor Code § 510 (overtime compensation);

    c. Labor Code § 1194 (overtime compensation);

    d. Labor Code § 1815 (overtime compensation);

    e. Labor Code § 1194 (failure to pay for all hours worked);

    f. Labor Code § 1197 (failure to pay for all hours worked);

    g. Labor Code § 201 (requirement to pay all wages upon discharge).

15. The violation of these laws serve as unlawful predicate acts for purposes of Business & Professions Code § 17200 and remedies are provided therein under Business & Professions Code § 17203. PHAN has suffered direct economic injury and harm in that he has not been paid all wages and compensation due in a timely manner.

16. The acts and practices described in this Complaint constitute unlawful, unfair and fraudulent business practices, and unfair competition by Defendants within the meaning of Business & Professions Code § 17200 et seq.

17. Business & Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition and to which those persons have an ownership interest. PHAN is entitled to restitution pursuant to Business & Professions Code §§ 17203 and 17208 for all wages unlawfully withheld from him and at least in the amounts of the State Court Judgment, as amended.

///

///

18. PHAN is entitled to be paid for all hours worked including overtime and prevailing wages pursuant to California law and at least in the amounts of the State Court Judgment, as amended.

19. PHAN herein takes upon himself enforcement of these laws and lawful claims. there is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize PHAN by forcing him to pay attorney's fees from the recovery in this action. Therefore, attorney's fees are appropriate pursuant to California Code of Civil Procedure § 1021.5.

20. Labor Code § 510 provides:

> Eight hours of labor constitutes a day's work, unless it is otherwise stipulated by the parties to a contract. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for any employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

21. Labor Code § 1810 provides:

> Eight hours labor constitutes a legal day's work in all cases where the same is performed under the authority of any law of this State, or under the direction, or control, or by the authority of any officer of this State acting in his official capacity, or under the direction, or control or by the authority of any municipal corporation, or of any officer thereof. A stipulation to that effect shall be made a part of all contracts to which the State or any municipal corporation therein is a party.

22. Labor Code § 204 requires employers to provide employees with all wages due and payable twice a month. As Defendants failed to provide PHAN with compensation on a bi-weekly basis, for all overtime and other wage compensation due, Defendants violated Labor code § 204. Defendants' violation of this and other applicable Labor Code sections was willful, knowing, and malicious, and did cause direct and proximate harm to PHAN.

23. Labor Code § 1194 provides for a private right of action to recover overtime compensation. It states, in pertinent part:

///

> [A]ny employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

24. Labor Code § 218 provides a private right of action to recover wages under the Labor Code. Plaintiff is entitled to recover unpaid wages and penalties directly under § 218. The Defendants' violations of this and other applicable Labor Code sections was willful, knowing, and malicious, and did cause direct and proximate harm to the Plaintiff.

25. Labor Code § 218.6 provides for interest on all due and unpaid wages in any action brought for the nonpayment of wages. PHAN is entitled to recover interest on all wages due. Defendants violations of this and other applicable Labor Code sections was willful, knowing, and malicious, and did cause direct and proximate harm to the PHAN.

26. PHAN is entitled to recover all unpaid overtime wages, penalties, and interest due.

27. Labor Code § 218.6 provides for an award of interest on all due and unpaid wages. PHAN is entitled to recover interest on all wages due under this section on behalf of himself and others similarly situated. Defendants' violations of this and other applicable Labor Code sections was willful, knowing, and malicious, and did cause direct and proximate harm to PHAN.

28. Defendants' conduct in willfully refusing and failing to pay PHAN wages due, overtime due, and to promptly pay wages due upon termination of employment violate a **fundamental public policy** in the State of California. For example, Labor Code § 210 provides for civil penalties for violations of Labor Code § 203 (requiring employers to provide employees with all wages due and payable within 72 hours of termination) and Labor Code § 204 (requiring employers to provide employee with all wages due and payable twice a month), while Labor Code § 210 provides for civil penalties for violations of Labor Code § 204 in the amount of $100.00 per initial violation per employee and for subsequent violations or any willful or intentional

violation, $200.00 per employee, plus 25% of the amount unlawfully withheld; Labor Code § 1194 provides for a private right of action to recover overtime compensation; Labor Code § 218 provides for a private right of action to recover wages including penalties under the Labor Code; Labor Code § 203 provides for civil penalties in the amount of one day's wages for each day of violation of §§ 201 and 202 of the Labor Code for up to 30 days; Labor Code § 226(a) requires an employer to, as a detachable part of the check or separately, when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee; failure to comply with Labor Code § 226 implicates § 226(e) authorizing recovery of all actual damages or $50.00 for the initial pay period in which a violation occurs and $100.00 per employee for each violation in a subsequent pay period, up to an aggregate of $4,000.00; Labor Code § 226.3 providing civil penalties for a violations of § 226 in the amount of $250.00 per initial violation and $1,000.00 per employee for each subsequent violation; and, finally, Labor Code § 226(g) authorizing injunctive relief, the recovery of attorney's fees and costs to an injured employee.

29. As a proximate result of the above described conduct of Defendants, PHAN has been damaged in amounts to be determined which PHAN reasonably believes to be no less than $118,591.21 pursuant to his Proof of Claim filed herein on March 3, 2020, a true and correct of which is attached to this Complaint and incorporated herein by reference as **Exhibit C**, plus such attorney's fees and costs and interest incurred in

bringing this action to determine nondischargeability and otherwise to collect upon the PHAN Judgment.

30. The debt owed to PHAN is not dischargeable because it constitutes money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition in violation of 11 U.S.C. §523(a)(2). To wit, Defendants promised to pay PHAN $12.00 per hour but, within a week of ownership, changed PHAN'S compensation to a fixed salary of $1,500.00 per month in cash with no record which was, in itself, deliberately never kept so as to deny PHAN'S employee status at a later time which was, in fact, done; denying that PHAN was Defendants' employee. PHAN relied, to his detriment, on Defendants' promise to pay the sums previously noted and their willful failure to comply with the provisions of the California Labor Code. As Defendants' debt to PHAN arose from their fraudulent conduct and false pretenses, they are nondischargeable under Section 523(a)(2). **In addition**, inasmuch as the debt owed to PHAN, as mentioned heretofore, arise out of a violation of California's **fundamental public policy** favoring the full and prompt payment of wages due an employee reflecting the unequal economic position of the parties, the debt is non-dischargeable.

31. Defendants obtained funds from the services (cooking) provided by PHAN and failed to PHAN pay PHAN wages for the work performed. Defendants' failure was willful and knowing, and included failure to pay regular wages and overtime pay.

32. Defendants' failure to convey funds furnished to Defendant and Defendant's retention of said funds for Defendants' own benefit was undertaken by misrepresenting Defendants' position to persons contracting for Defendant's services and to PHAN, with a fraudulent intent and to benefit themselves – all while Defendants had the money to pay PHAN his lawfully due wages in accordance with the law.

33. As a result of Defendants' above-described actions, PHAN has suffered damages and harm.

34. Defendants' above-described actions constitute and include fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny pursuant to 11 U.S.C §523(a)(4).

35. The debt owed to PHAN is not dischargeable because it arose from Defendants' willful and malicious injury to PHAN or to the property of PHAN in violation of 11 U.S.C. §523(a)(6). Defendants could have paid the wages and overtime owed to PHAN and could have kept time records and provided accurate wage statements; however, Defendants chose not to do those things. Such conduct of an employer makes the resulting debt nondischargeable under §523(a)(6).

WHEREFORE, Plaintiff HOA PHAN, incorrectly named herein as HOA KHAN, prays for the following relief:

1. An order that the debt owed by Defendants, the Judgment Debtors, to Plaintiff upon the State Court Judgment, as amended, and Orders in favor of Plaintiff, copies of which are attached to this Complaint as **Exhibit A1-A3** and **Exhibit B**, is not dischargeable and is not discharged in this bankruptcy case;

2. An order that the debt owed by Defendants, the Judgment Debtors, to Plaintiff is not dischargeable and is not discharged in this bankruptcy case;

3. An order that Defendants are liable for all of Plaintiff's reasonable attorney's fees and costs incurred in bringing this action and prosecuting it;

4. Damages of no less than $118,591.21 pursuant to Plaintiff's Proof of Claim filed herein on March 3, 2020 (**Exhibit C**) plus such attorney's fees and costs and interest incurred in bringing this action to determine nondischargeability and otherwise to collect upon each of the Judgments; and

5. For such other and further relief as this Court deems just and proper.

Dated: April 3, 2020                          LAW OFFICES OF PANOS LAGOS


                                              _/s/Panos Lagos_
                                              Panos Lagos, Esq.
                                              Attorney for Plaintiff,
                                              HOA PHAN

# EXHIBIT  A-1

LABOR COMMISSIONER, STATE CALIFORNIA
Department of Industrial Relations
Division of Labor Standards Enforcement
P.O. Box 420603
San Francisco, CA 94142
Tel: (415)703-5300   Fax: (415)703-4130

(For Court use only)

FILED
SAN MATEO COUNTY

DEC 2 7 2016

Clerk of the Superior Court

16 – CIV – 03008
RQF
Request Filed
313140

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF **San Mateo county**

**San Mateo**                                    JUDICIAL DISTRICT

PLAINTIFF:  Hoa Phan

DEFENDANT: Jaffa City Cafe, a general partnership; Rhainell Madrona, Robert Madrona, and Delia M. Madrona each individually and as general partners of Jaffa City Cafe

Court No. **16 C I V 03008**

| STATE CASE NUMBER<br>**11 - 47854 EK** | **REQUEST THAT CLERK ENTER JUDGMENT AND JUDGMENT ON FINAL ORDER, DECISION OR AWARD OF THE LABOR COMMISSIONER** |
|---|---|

## *REQUEST THAT CLERK ENTER JUDGMENT*

The Order, Decision or Award of the Labor Commissioner has become final and the clerk is requested to enter judgment immediately in conformity with the accompanying certified copy.

LABOR COMMISSIONER, STATE OF CALIFORNIA    BY  *Carrie Mottau*
**DATED:**    December 15, 2016                    Carrie J. Mottau                    DEPUTY

### JUDGMENT

A certified copy of a final Order, Decision or Award of the Labor Commissioner has been filed with this court. Judgment therefore is entered as follows:

(1) $ _____27,461.50_____ for wages and expenses pursuant to Labor Code Section(s) 98.1 and/or 2802;

(2) $ _____31,450.00_____ for liquidated damages pursuant to Labor Code Section 1194.2;

(3) $ _____9,054.62_____ interest pursuant to Labor Code Section(s) 98.1(c), 1194.2 and/or 2802(b);

(4) $ _____4,205.40_____ for additional wages accrued pursuant to Labor Code Section 203 as a penalty;

(5) $ _____0.00_____ for penalties pursuant to Labor Code Section 203.1.

(6) $ _____0.00_____ other (specify):

(7) $ _____72,171.52_____ **Total Amount of Plaintiff's Award**

(8) $ _____1,807.69_____ for post hearing interest pursuant to Labor Code Section(s) 98.1(c), 1194.2 and/or 2802(b);

(9) $ _____450.00_____ for filing fee, pursuant to Labor Code Section 101, et. seq.

(10) $ _____74,429.21_____ **Total Amount of Judgment**

DEC 2 7 2016

I certify this to be a true copy of the judgment entered on _____ ; in Judgment book _____ at page _____ or microfilm, pursuant to CCP 668.5.

**RODINA M. CATALANO**
Clerk, by _____ , Deputy Clerk

DLSE 545(2001) (Rev. 1/12)        REQUEST THAT CLERK ENTER JUDGMENT        L.C. 98

# EXHIBIT A-2

ENDORSED FILED
SAN MATEO COUNTY

AUG 0 5 2019

Clerk of the Superior Court
By___Jennifer Tanneus____
DEPUTY CLERK

Panos Lagos, Esq. / SBN 61821
**LAW OFFICES OF PANOS LAGOS**
5032 Woodminster Lane
Oakland, CA 94602
Tel. (510) 530-4078
Fax (510) 530-4725
e-mail: panos@panoslagoslaw.com

Attorney for Plaintiff and Judgment Creditor,
HOA PHAN

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO

UNLIMITED JURISDICTION

| | |
|---|---|
| HOA PHAN,<br><br>       Plaintiff,<br><br>v.<br><br>JAFFA CITY CAFE, a general partnership;<br>RHAINELL MADRONA, individually and as<br>general partners of JAFFA CITY CAFE,<br>ROBERT MADRONA, individually and as<br>general partners of JAFFA CITY CAFE,<br>DELIA M. MADRONA, individually and as<br>general partners of JAFFA CITY CAFE,<br><br>       Defendants, | Case No.: 16CIV03008<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION TO AMEND JUDGMENT |

Plaintiff's Motion to Amend Judgment came on for hearing before the Honorable Leland Davis, III, in Department 1, Courtroom 4C, 400 County Center, Redwood City, CA, 94063, on July 25, 2019. Having considered the evidence and arguments of the parties, and good cause appearing therefor,

IT IS ORDERED that the Judgment entered herein on December 27, 2016, be, and is hereby, amended to include aliases ("aka") of the already named Defendants as follows:

    1. Rhainell Madrona,

       aka rhainell-alumism; madrona,

       aka rhainell A. Madrona,

       aka Rhainell Alumism Madrona,

       aka Rhinell Madrona,

ORDER GRANTING MOTION TO AMEND JUDGMENT                – 1 –
*Phan v. Jaffa City Cafe, etc., et al.*
Case No.: 16CIV03008

1   individually and as a general partner of Jaffa City Café

2   2. Robert Madrona,

3       aka robert-alumism; madrona,

4       aka Robert Alumism Madrona,

5       individually and as a general partner of Jaffa City Café

6   3. Delia M. Madrona,

7       aka delia-marron; madrona,

8       aka Delia Marron Madrona,

9       individually and as a general partner of Jaffa City Café.

11  IT IS SO ORDERED.

13  Dated: AUG 0 2 2019                              **LELAND DAVIS, III**

                                                   _____
14                                                 HONORABLE LELAND DAVIS, III
                                                   JUDGE OF THE SUPERIOR COURT

ORDER GRANTING MOTION TO AMEND JUDGMENT                    - 2 -
*Phan v. Jaffa City Cafe, etc., et al.*
Case No.: 16CIV03008

# EXHIBIT  A-3

Case: 20-04017   Doc# 1   Filed: 04/03/20   Entered: 04/03/20 17:58:15   Page 17 of 71



SCANNED

1 | Panos Lagos, Esq. / SBN 61821
LAW OFFICES OF PANOS LAGOS
2 | 5032 Woodminster Lane
Oakland, CA 94602
3 | Tel. (510) 530-4078
Fax (510) 530-4725
4 | e-mail: panos@panoslagoslaw.com

5 | Attorney for Plaintiff and Judgment Creditor,
HOA PHAN
6

FILED
SAN MATEO COUNTY

SEP 2 3 2019

Clerk of the Superior Court
By _____
DEPUTY CLERK

7

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO

8

UNLIMITED JURISDICTION

9

10 | HOA PHAN,                                   Case No.: 16CIV03008

11 |                 Plaintiff,                  [Proposed] ORDER GRANTING
                                                 PLAINTIFF'S MOTION TO [FURTHER]
     v.                                          AMEND JUDGMENT
12 | JAFFA CITY CAFE, a general partnership;
RHAINELL MADRONA, individually and as        Date:  9/11/2019
13 | general partners of JAFFA CITY CAFE,        Time:  9:00 a.m.
ROBERT MADRONA, individually and as          Dept.: Law and Motion
14 | general partners of JAFFA CITY CAFE,
DELIA M. MADRONA, individually and as
15 | general partners of JAFFA CITY CAFE,

16 |                 Defendants,

17

18 |         Plaintiff's Motion to Amend Judgment came on for hearing before the Honorable Leland

19 | Davis, III, in Department 1, Courtroom 4C, of the above-entitled Court located at 400 County

20 | Center, Redwood City, CA, 94063, on September 11, 2019. Having considered the evidence and

21 | arguments of the parties, and good cause appearing therefor,

22 |         IT IS ORDERED that the Judgment entered herein on December 27, 2016, be, and is

23 | hereby, further amended to add the following names as a Judgment Debtors:

24 |              1.  Robert Madrona,

25 |                  individually and dba

26 |                  City Cafe

27 | ///

28 | ///

[Proposed] ORDER GRANTING MOTION TO [FURTHER] AMEND JUDGMENT
*Phan v. Jaffa City Cafe, etc., et al.*
Case No.: 16CIV03008                                                    − 1 −

2. Delia Madrona,

   individually and dba

   City Cafe

IT IS SO ORDERED.

Dated: __SEP 2 0 2019__

_Leland Davis 3_

HONORABLE LELAND DAVIS, III
JUDGE OF THE SUPERIOR COURT

[Proposed] ORDER GRANTING MOTION TO [FURTHER] AMEND JUDGMENT
_Phan v. Jaffa City Cafe, etc., et al._
Case No.: 16CIV03008

– 2 –

# EXHIBIT  B

**FILED**

LABOR COMMISSIONER, STATE ⬤ CALIFORNIA
Department of Industrial Relations
Division of Labor Standards Enforcement
P.O. Box 420603
San Francisco, CA 94142
Tel: (415)703-5300   Fax: (415)703-4130

16 – CIV – 03008
ORD
Order
313149

For C⬤ SAN MATEO COUNTY

DEC 2 7 2016

Clerk of the Superior Court

by _____
DEPUTY CLERK

Plaintiff:   Hoa Phan

Court Number
**16CIV03008**

Defendant:   Jaffa City Cafe, a general partnership; Rhaineli Madrona, Robert Madrona, and Delia M. Madrona each individually and as general partners of Jaffa City Cafe

| State Case Number | ORDER, DECISION OR AWARD OF THE LABOR COMMISSIONER |
|---|---|
| 11 - 47854 EK | |

1. The above-entitled matter came on for hearing before the Labor Commissioner of the State of California as follows:

**DATE:** June 28, 2016    ☐ **CONTINUED TO:**

**CITY:** 455 Golden Gate Ave. - 10th floor East, San Francisco, CA

2. IT IS ORDERED THAT:

| $ | | |
|---|---|---|
| $ | 27,461.50 | for **wages** (with lawful deductions) |
| $ | 31,450.00 | for liquidated damages pursuant to Labor Code Section 1194.2 |
| $ | 0.00 | Reimbursable business expenses |
| $ | 9,054.62 | for interest pursuant to Labor Code Section(s) 98.1(c), 1194.2 and/or 2802(b), |
| $ | 4,205.40 | for additional wages accrued pursuant to Labor Code Section 203 as a penalty *and that same shall not be subject to payroll or other deductions.* |
| $ | 0.00 | for penalties pursuant to Labor Code Section 203.1 which *shall not be subject to payroll or other deductions.* |
| $ | 0.00 | other (specify): |
| $ | **72,171.52** | **TOTAL AMOUNT OF AWARD** |

3. The herein Order, Decision or Award is based upon the Findings of Fact, Legal Analysis and Conclusions attached hereto and incorporated herein by reference.

4. The parties herein are notified and advised that this Order, Decision or Award of the Labor Commissioner shall become final and enforceable as a judgment in a court of law unless either or both parties exercise their right to appeal to the appropriate court* within ten (10) days of service of this document. Service of this document can be accomplished either by first class mail or by personal delivery and is effective upon mailing or at the time of personal delivery. If service on the parties is made by mail, the ten (10) day appeal period shall be extended by five (5) days. For parties served outside of California, the period of extension is longer (See Code of Civil Procedure Section 1013). In case of appeal, the necessary filing fee must be paid by the appellant and appellant must, immediately upon filing an appeal with the appropriate court, serve a copy of the appeal request upon the Labor Commissioner. If an appeal is filed by a corporation, a non-lawyer agent of the corporation may file the Notice of Appeal with the appropriate court, but the corporation must be represented in any subsequent trial by an attorney, licensed to practice in the State of California. Labor Code Section 98.2(c) provides that if the party seeking review by filing an appeal to the court is unsuccessful in such appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other party to the appeal and assess such amount as a cost upon the party filing the appeal. An employee is successful if the court awards an amount greater than zero.

**PLEASE TAKE NOTICE:** Labor Code Section 98.2(b) requires that as a condition to filing an appeal of an Order, Decision or Award of the Labor Commissioner, the employer shall first post a bond or undertaking with the court in the amount of the ODA; and the employer shall provide written notice to the other parties and the Labor Commissioner of the posting of the undertaking. Labor Code Section 98.2(b) also requires the undertaking contain other specific conditions for distribution under the bond. While this claim is before the Labor Commissioner, you are required to notify the Labor Commissioner *in writing* of any changes in your business or personal address within 10 days after any change occurs.

* San Mateo Superior Court
  Civil Division-Room A
  400 County Center
  Redwood City, CA 94063-1655

**DATED:** August 25, 2016

LABOR COMMISSIONER, STATE OF CALIFORNIA

BY: _Carrie J. Mottau_

Carrie J. Mottau        HEARING OFFICER

DLSE 535 (Rev. 1/12)        ORDER, DECISION OR AWARD OF THE LABOR COMMISSIONER        L.C. 98

HOA PHAN )
)
         Plaintiff, )    CASE NO. 11-47854 EK
)
vs. )
)    ORDER, DECISION OR AWARD
)    OF THE LABOR COMMISSIONER
JAFFA CITY CAFE, a general partnership; )
RHAINELL MADRONA, ROBERT MADRONA, )
and DELIA M. MADRONA, each individually )
and as general partners of JAFFA CITY CAFE, )
a general partnership )
         Defendants )
_____ )

## BACKGROUND

Plaintiff filed an initial claim with the Labor Commissioner's office on May 11, 2015. The Complaint alleges Plaintiff is owed:

    1. Unpaid regular and overtime wages for the period of September 19, 2012, to February 8, 2015;

    2. Meal period premiums for the period of September 19, 2012, to February 8, 2015;

    3. Rest period premiums for the period of September 19, 2012, to February 8, 2015;

    4. Liquidated damages pursuant to Labor Code Section 1194.2; and,

    5. Penalties pursuant to Labor Code Section 203.

A hearing was conducted in San Francisco, California, on June 28, 2016, before the undersigned hearing officer designated by the Labor Commissioner to hear this matter. Plaintiff appeared, represented by Mark Franklin, Attorney at Law. Michael Melchin, Attorney at Law, represented Defendants, Rhainell Madrona, Delia Madrona, and Robert Madrona. Daniel Kai Soo Eng appeared as a witness for Plaintiff. Ismet Saateiglu and Rudy Garcia appeared as witnesses on behalf of Defendants.

Case: 20-04017   Doc# 1   Filed: 04/03/20   Entered: 04/03/20 17:58:15   Page 22 of 71

Due consideration having been given to the testimony, documentary evidence, and arguments presented, the Labor Commissioner hereby adopts the following Order, Decision or Award.

FINDINGS OF FACT

In September 2012, two brothers, Rhainell Madrona and Robert Madrona, purchased a coffee shop in Colma, California. Together, along with Robert Madrona's wife, Delia Madrona (hereinafter collectively referred to as the Madrona's), operated Jaffa City Café. According to Plaintiff, he worked as a cook for the previous owners, and the Madrona's continued his employment, beginning September 19, 2012, through February 8, 2015. Robert Madrona initially offered to continue Plaintiff's employment at the rate of $12.00 per hour but, within a week of ownership, he changed Plaintiff's compensation to a fixed salary of $1,500.00 per month. Plaintiff always received payments in cash from Delia Madrona, and neither party kept of any record of the amounts paid to Plaintiff.

While working for the Madrona's, Plaintiff prepared traditional Vietnamese dishes such as Vietnamese coffee, using filters he special ordered from Vietnam, banh mi sandwiches, and pho, as well as other menu items, including BBQ chicken sandwiches. Plaintiff alleged that he arrived at the coffee shop daily at 5:30 a.m., in preparation for opening at 6:00 a.m., and that he worked until 8:30 p.m., seven days per week. The shop started serving food at 8:00 a.m., but Plaintiff reported that he served coffee to customers, and began preparing food at 6:00 a.m. Towards the end of his employment, approximately December 2014, Plaintiff obtained a second job and reduced his hours to 6:00 a.m. to 10:00 a.m., seven days per week, and his monthly salary was reduced to $800.00.

Plaintiff contended that he worked with Rhainell Madrona, Robert Madrona, and Delia Madrona at different times throughout the day. Delia usually arrived around 8:00 a.m., and she regularly prepared the Middle Eastern dishes on the menu, as well as

Case: 20-04017   Doc# 1   Filed: 04/03/20   Entered: 04/03/20 17:58:15   Page 23 of 71

her empanadas, and was responsible for the bookkeeping, inventory, and purchasing of supplies. Robert also spent time working in the mid-afternoon, helping serve customers, and purchasing supplies. Rhainell arrived around 2:00 p.m. to help with the afternoon shift, and he closed the store at the end of the day.

At Rhainell's request, Plaintiff attended a training course in food safety on November 28, 2012, the title of the course, as listed on the Certificate of Attendance, was "New Owner Orientation Seminar". Plaintiff reported that completion of this training was required in order for him to continue working at the café. Rhainell attended the training with Plaintiff, and paid the registration fee on Plaintiff's behalf.

According to Plaintiff, for the period of September 19, 2012, through December 31, 2014, he regularly worked 29 overtime hours, and 15 double time hours each week. Beginning January 1, 2015, when Plaintiff reduced his hours, Plaintiff contended that he 4.5 overtime hours each week. However, Plaintiff never received any compensation for overtime hours worked. Throughout his employment, based on his fixed salary, the Madrona's paid Plaintiff for 40 hours of work each week, and a total of $65,230.00. Plaintiff contended that the Madrona's failed to pay him for any hours worked beyond 40 regular hours per week.

Plaintiff also asserted that he never received a meal or rest period throughout his employment. Plaintiff acknowledged that he had the opportunity to eat a quick meal, lasting 10 to 15 minutes, as well as the ability to stand outside and smoke cigarettes, but that customers frequently interrupted him. Plaintiff claimed that he could not leave the store for a meal period, but also later stated that he could leave if he wanted, but that he did not usually have anywhere else to go. On occasion, Plaintiff could use the café computers to communicate with his wife, and, twice per month, Plaintiff had the ability to leave the store to send money to his family, which usually took about one hour. During his employment, September 19, 2012, through February 8, 2015, Plaintiff argued that he worked 816 days without a meal or rest period.

Page 3

Plaintiff quit without notice on February 8, 2015, after Robert Madrona paid him $200.00 for work performed that week.

Daniel Kai Soo Eng, a previous customer of Jaffa City Café, testified that he visited the café on 10 to 12 occasions in 2014, and each time he observed Plaintiff wearing a white apron, performing different tasks, including preparing food, collecting customer payments, serving food, and working behind the counter. Eng explained that Jaffa City Café sold pho, a Vietnamese soup, prepared by Plaintiff, as well as Vietnamese coffee. On one occasion, Eng gave Plaintiff a ride to the nearby BART station so that Plaintiff could deliver some sandwiches to a customer. Eng testified that he offered Plaintiff a job helping on a construction site, and that Plaintiff worked for him on a Monday, his regular day off. Eng believed Robert Madrona, Rhainell Madrona, and Delia Madrona to be the owners of Jaffa City Café.

The Madrona's denied any employment relationship with Plaintiff. Robert Madrona and Rhainell Madrona verified their general partnership, operating Jaffa City Café, however, denied any ownership or partnership interest by Delia Madrona. No written partnership agreement existed, and they have subsequently formed City Café of Colma, LLC, with Robert Madrona and Rhainell Madrona as the only members.

Robert Madrona testified that after purchasing the business in September 2012, he met Plaintiff as a customer. He denied that Plaintiff ever performed any work at the café, but that Plaintiff spent several hours each day using one of the café's free computers. Robert only knew that Plaintiff frequently communicated with his wife in another country using the computer, but had no other personal information about Plaintiff. The café operates four days per week, Tuesday through Friday, and opens at 8:00 a.m. They cannot afford employees, so Robert, Rhainell and Delia run it themselves. Robert argued that the café does not have a cooking facility on site, so Plaintiff could not have cooked soup or BBQ chicken as he described. He denied that the café serves Vietnamese coffee, or that it offered any other traditional Vietnamese cuisine. Robert denied that he ever

Case: 20-04017    Doc# 1    Filed: 04/03/20    Entered: 04/03/20 17:58:15    Page 25 of 71

offered Plaintiff employment, and denied making any payments to Plaintiff. Around February 2015, Plaintiff just stopped coming to the café, and Robert never saw him again.

Delia Madrona reported that she is not an owner or partner of Jaffa City Café, but that she operates the café every day, opening the business at 8:00 a.m., and works until 4:00 p.m., Tuesday through Friday. Delia denied any relationship with Plaintiff, only that she saw him as a customer occasionally. Delia explained that she never paid any attention to customers, so she did not know about how many times she saw Plaintiff, or how frequently, or if he ever ordered any food or coffee, but she did see him using the computer. Delia explained that the café has an oven for reheating things like bread, sandwiches, pizza, or empanadas, but no stove for cooking. According to Delia, the café only serves prepared soup, like Top Ramen, that requires only boiling water. She denied that the café serves any Vietnamese food, including bahn mi or bbq chicken sandwiches, or that she ever paid Plaintiff any amount of money. Delia Madrona testified that she prepared chicken adobo and empanadas at home, and brought them to the café to sell. She also took special orders from customers and friends for these items.

Rhainell Madrona testified that he is a general partner operating Jaffa City Café, with his brother. He regularly works from 3:30 p.m. to 8:30 p.m., with the café closing at 7:00 p.m. Rhainell acknowledged that he knew Plaintiff as a customer at the café, where he purchased coffee and used their computers. Rhainell denied that Plaintiff ever worked at the café. Rhainell believed that Plaintiff spent a lot of time on the computer searching for jobs, and they had conversations about the restaurant industry. As a gesture, Rhainell offered to bring Plaintiff with him to a food safety-training course. Rhainell explained that he thought this training might be useful experience for Plaintiff in securing a job in the food industry. Rhainell confirmed that they attended the training together, he paid for Plaintiff's registration, and drove him to the class, but he denied that the training had anything to do with an employment relationship with Plaintiff.

Ismet Saateiglu, customer of Jaffa City Café, testified that he has been a customer of the café for approximately the past two years, and he visits three to four days per week. Saateiglu reported that he has never seen Plaintiff before, at the café, or elsewhere. Saateiglu regularly just ordered coffee or a sandwich, and the café served chicken adobo, but he did not recall Vietnamese coffee, pho, or bahn mi on the menu. Saateiglu usually saw Delia working, but occasionally Robert or Rhainell were present if he visited later in the afternoon. Saateiglu could not recall the café's operating hours specifically, but he believed that the café was closed on Saturdays and Sundays. Based on his observations, Saateiglu gathered that Robert Madrona, Rhainell Madrona, and Delia Madrona were the owners of Jaffa City Café.

Rudy Garcia, property manager, lives in the apartment directly above the café. Garcia testified that he has lived on the premises for 15 years, and, although he did not frequently go in to the downstairs café, he saw Plaintiff at the café about three times per week. He observed Plaintiff using the café computers, or smoking outside for three to four hours each day. Garcia denied that he ever saw Plaintiff performing any work. Even though Garcia did not wake up before 8:00 a.m., he heard noises from downstairs when the café opened, and reported that Delia usually opened the café around 8:00 a.m. According to Garcia, Rhainell closed the café around 7:00 p.m. Occasionally Garcia purchased food at the café, and, according to Garcia, the café only served "American sandwiches", and Middle Eastern and Filipino type foods.

In response, Plaintiff described a credit card fraud incident that occurred at the café on June 24, 2014. Plaintiff cooperated with the police investigation, and he provided the police report, which states, in relevant part, "...Upon our arrival, I met with an employee from the Café, Hoa Am Phan. Phan told me that, "Three school looking kids ran away without paying..."

According to Plaintiff, the Madrona's are Filipino and, other than their Filipino relatives, Plaintiff worked as their only employee. Plaintiff identified himself as

Case 20-04017    Doc# 1    Filed: 04/03/20    Entered: 04/03/20 17:58:15    Page 27 of 71

Vietnamese, and explained that several customer reviews posted on the internet refer to him, or his Vietnamese cooking, establishing the work he did at the café. For example, on July 10, 2014, a customer posted on Yelp, "…The 3 person staff is very friendly. Their white chocolate mocha and Vietnamese coffee is delicious and the chef makes a bomb bbq chicken banh mi sandwich. I think it's the cole slaw that gives it a bit of a sweet kick. I haven't had the pho yet because I'm always ordering the bahn mi…" On December 3, 2014, another customer also posted on Yelp, "This used to be my go to place for gyros in the peninsula. Apparently the ownership changed and it is now run by a Filipino/Vietnamese guy…"

## LEGAL ANALYSIS

Robert Madrona and Rhainell Madrona admittedly operated Jaffa City Café as a general partnership; however, they denied any partnership relationship with Delia Madrona.

A partnership is a form of co-ownership by several persons who together own the business assets and who are personally liable for all business debts. (Corp. Code §16306(a).) Each partner is jointly and severally liable for the debts and obligations of the partnership and each partner is deemed the agent of the partnership in dealing with third persons while carrying on partnership business. Generally, each partner has equal right to participate in the management and control of the business. Robert Madrona, Rhainell Madrona, and Delia Madrona, all managed and controlled the operation of Jaffa City Café. Specifically, Delia Madrona performed bookkeeping, issued payments, and purchased supplies for the business, thus having authority to make financial decisions on behalf of the business. Delia Madrona had the discretion to sell her chicken adobo and empanadas at the café, and gave out business cards listing the café's name and address advertising the sale of her empanadas. Furthermore, Delia Madrona's actions at the café created a presumption of ownership with the café's customers.

Case: 20-04017    Doc# 1    Filed: 04/03/20    Entered: 04/03/20 17:58:15    Page 28 of 71

1  The preponderance of the evidence in this case requires a finding that Delia
2  Madrona was also a partner in Jaffa City Cafe.

3  In California, any person rendering service for another is presumed to be an
4  employee. (Labor Code Section 3357.) The burden of overcoming this presumption is on
5  the Defendant raising the argument that the worker was not an employee. In this case,
6  the Madrona's failed to rebut the presumption of employment.

7  The definition of "employer" for purposes of California's labor laws is set forth in
8  Section 2 of the Industrial Welfare Commission Order. It which provides, in relevant
9  part, that an "employer" is any person who directly or indirectly, or through an agent or
10  any other person, employs or exercises control over the wages, hours, or working
11  conditions of any person.

12  In *Martinez v. Combs* (2010) 49 Cal.4th 35, the California Supreme court held that
13  "employ" is defined as "(a) to exercise control over the wages, hours, or working
14  conditions or (b) to suffer or permit to work or (c) to engage, thereby creating a common
15  law employment relationship."

16  The Madrona's argued that Plaintiff was a customer, not an employee, however,
17  the totality of the credible evidence and testimony failed to support that argument. They
18  denied his presence at the café as employment, instead, alleged he spent over two years,
19  and upwards of 12 to 16 hours per week, drinking coffee, and using their computers.
20  Plaintiff presented persuasive evidence that customers, and the public, acknowledged
21  him as cooking and serving customers at Jaffa City Café. Statements by third parties,
22  albeit unverified, gave significant reason to believe that the café served some Vietnamese
23  cuisine, as corroborated by Plaintiff and Eng's credible testimony. The Madrona's
24  statements that no such food was served was disingenuous. According to Delia, she
25  hardly noticed Plaintiff, stating she did not pay much attention to the customers, even
26  one that was present in a small coffee shop almost every day it operated. Rhainell
27  supposedly developed such a relationship with Plaintiff that he pitied Plaintiff, and

Case: 20-04017   Doc# 1   Filed: 04/03/20   Entered: 04/03/20 17:58:15   Page 29 of 71

offered Plaintiff transportation and payment of registration fees for Plaintiff to attend a food safety course specifically designed for "New Owners", a course that the City requires of all people handling food to serve to the public. Neither testimony was plausible. Plaintiff performed tasks under the direction of Robert Madrona, Delia Madrona, and Rhainell Madrona, Plaintiff received payment at a rate dictated by Robert Madrona, and was paid wages by Delia Madrona. The preponderance of the evidence in this case requires a finding that Plaintiff was not a customer of Jaffa City Café. Rather, he was an employee and was entitled to the protections of the Labor Code and Wage Order. For the reasons set forth above, Robert Madrona, an individual, Delia Madrona, an individual, and Rhainell Madrona, an individual (collectively referred to herein as "Defendants") are jointly liable and severally liable as general partners of Jaffa City Café and as Plaintiff's employers.

Defendants were subject to the requirements of Industrial Welfare Commission Order 5-2001 (the Order) which requires the following:

- Payment of overtime (one and one-half times the regular hourly rate) for hours worked in excess of eight hours per day or 40 hours per week or the first eight hours of the seventh consecutive workday of the workweek.

- Payment of double the regular hourly rate for hours worked in excess of twelve hours per workday or eight hours on the seventh consecutive workday of the workweek.

Section 7 of the Order further requires that employers maintain "accurate information with respect to each employee including ... (3) Time records showing when the employee begins and ends each work period. ... (4) Total wages paid each payroll period, including value of board, lodging, or other compensation actually furnished to the employee. (5) Total hours worked in the payroll period and applicable rates of pay. This information shall be made readily available to the employee upon reasonable request." (Wage Order No. 5, §7.) Where the employer has failed to maintain records as required by law, an employee has met his burden by raising an inference that the amount

Case 20-04017    Doc# 1    Filed: 04/03/20    Entered: 04/03/20 17:58:15    Page 30 of 71

and extent of his working hours was just and reasonable. The burden then shifts to the employer to either produce evidence that reflects the precise amount of work performed or that negates the reasonableness of the inference drawn from the employee's evidence. If the employer fails to meet his burden, the court may award damages to the employee, even if the amount is only approximate. (*Hernandez v. Mendoza* (1988) 199 Cal. App. 3d 721, citing *Anderson, supra*, 328 U.S. at 687.)

In this case, neither Defendants nor Plaintiff kept records of Plaintiff's hours worked. The parties disputed the café's hours and days of operation, and Plaintiff based his claim on an allegation that he predominately worked 15 hours per day, 7 days per week, less 4 holidays per year, without time off for vacation, or sick time. Credible witness testimony established that Plaintiff had at least one day off per week, and credible evidence established that the business opened at 7:00 a.m., with Rhainell Madrona closing the café each evening sometime between 7:00 p.m. and 8:30 p.m. Defendants negated the reasonableness of Plaintiff's estimated hours worked, however, they failed to supply any practical accounting of Plaintiff's actual hours worked. Absent the existence of any reliable records establishing Plaintiff's hours worked, the preponderance of the evidence suggests that Plaintiff worked from 7:00 a.m. to 7:00 p.m., 6 days per week, for the period of September 19, 2012, through December 31, 2014. From January 1, 2015, through February 8, 2015, Plaintiff worked from 7:00 a.m. to 10:00 a.m., six days per week.

The salary paid to a non-exempt salaried employee only covers the forty non-overtime hours of the workweek. It does not serve to compensate the worker for any overtime hours (*Skyline Homes v. DIR* (1985) 165 Cal.App.3d 239). Pursuant to Labor Code Section 515 (d), a weekly salary must be divided by the maximum allowable non-overtime hours, 40, to establish a regular hourly rate of pay, which is then the basis for all overtime calculations. Plaintiff's initial rate of pay was $12.00 per hour. For the period of September 26, 2012, through December 31, 2014, Plaintiff earned a salary of $1,500.00 per

Case: 20-04017    Doc# 1    Filed: 04/03/20    Entered: 04/03/20 17:58:15    Page 31 of 71

month, the equivalent of $8.65 per hour.[1] Finally, for the period of January 1, 2015, through February 8, 2015, Plaintiff earned a monthly salary of $800.00 for part time work, the equivalent of $10.26 per hour[2]

Throughout his employment, Plaintiff earned $92,691.50, as follows:

September 19, 2012, to September 25, 2012:
48 regular hours x $12.00 per hour + 24 overtime hours x $18.00 per hour;

September 26, 2012, to June 30, 2014:
3,640 regular hours x $8.65 per hour + 2,912 overtime hours x $12.98 per hour;

July 1, 2014, to December 31, 2014:
1,080 regular hours x $9.00 per hour[3] + 864 overtime hours x $13.50 per hour; and,

January 1, 2015, to February 8, 2015: (5.5 weeks)
99 hours x $10.26 per hour

Plaintiff established that he received payments from Defendants totaling $65,230.00. Therefore, Plaintiff shall recover from Defendants the balance of earned and unpaid wages of $27,461.50.

Labor Code Section 1194.2(a) states as follows:
In any action under Section 98, 1193.6, or 1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. Nothing in this subdivision shall be construed to authorize the recovery of liquidated damages for failure to pay overtime compensation.

Defendants were required to pay Plaintiff the applicable California minimum wage for each and every hour he worked. Defendants failed to meet their minimum wage obligations on several occasions throughout Plaintiff's employment, and Plaintiff is entitled to recover $31,450.00 in liquidated damages pursuant to Labor Code Section

---

[1] $18,000.00 per year/52 weeks/5 days/8 hours= $8.65 per hour.
[2] During this period, Plaintiff received $800.00 per month and worked 18 hours per week.
[3] Effective July 1, 2014, the California minimum wage rate was $9.00 per hour.

Case: 20-04017    Doc# 1    Filed: 04/03/20    Entered: 04/03/20 17:58:15    Page 32 of 71

1194.2, determined as follows.

For the period of September 19, 2012, through June 30, 2014, the California minimum wage rate was $8.00 per hour. Plaintiff worked 3,688 regular hours, and he received payment of these hours at the rate of $8.65 per hour, thus Defendants met their minimum wage obligation for regular hours during this period.

However, because a fixed salary is only deemed to have compensated a non-exempt employee for regular hours worked, Plaintiff worked 2,912 overtime hours during this period for which he received no compensation whatsoever. Therefore, Plaintiff is entitled to receive liquidated damages pursuant to Labor Code Section 1194.2 for unpaid minimum wages during this period of 2,912 hours at the rate of $8.00 per hour, $23,296.00.

For the period of July 1, 2014, through December 31, 2014, the minimum wage rate was $9.00 per hour. Plaintiff worked 1,080 regular hours and received payment of all regular hours worked at the rate of $8.65 per hour, a $0.35 per hour shortfall. Therefore, Plaintiff shall recover 1,080 hours at the rate of $0.35 per hour, $378.00, in liquidated damages for regular hours worked during this period.

During this same period, Plaintiff worked 864 overtime hours, by which, because of his fixed salary, Plaintiff received no compensation. Therefore, Plaintiff shall recover liquidated damages for overtime hours worked during this period of 864 hours at the rate of $9.00 per hour, $7,776.00.

For the period of January 1, 2015, through February 8, 2015, Plaintiff worked 99 hours and received payment of $1,000.00, for a rate of $10.10, above the minimum wage rate. Therefore, Defendants met their minimum wage obligation during this period, and no liquidated damages are due.

Section 11 (Meal Periods) of the Order, provides that:

- No employer shall employ any person for a work period of more than five hours without a meal period of not less than 30 minutes, except that when a work period

of not more than six hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee.

Section 12 of the Order provides:

• Every employer shall authorize and permit all employees to take rest periods, which in so far as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one half (3 1/2) hours. Authorized rest period time shall be counted, as hours worked, for which there shall be no deduction from wages.

Employers must provide meal and rest periods, but they need not ensure the employees take them. Employers cannot impede, discourage, or dissuade employees from taking meal or rest periods. Plaintiff, as the party asserting the affirmative, has the burden of proof including the initial burden of going forward and the burden of persuasion by a preponderance of the evidence. Plaintiff has presented no evidence of sufficient substantiality to support his claim that he was denied meal or rest periods; Plaintiff smoked cigarettes and used Defendants' computers to communicate with his wife via the internet. Plaintiff's testimony supports a finding that Plaintiff received meal breaks, as evidenced by his ability to leave the café when he needed to send money to his family. Simply because Plaintiff chose not to leave the café, or did not have anywhere else to be, does not indicate that Defendants prevented him from leaving, or receiving a meal period pursuant to the Order. Therefore, Plaintiff's claim for meal and rest period premiums pursuant to Labor Code Section 226.7 is denied.

Labor Code Sections 98.1(c) and 1194.2, provide that all awards granted pursuant to this hearing shall accrue interest on all due and unpaid wages from the date that said wages became due until they are paid. Therefore, Plaintiff is entitled to $9,054.62 in interest accrued to date on the unpaid balance of wages and liquidated damages.

Case: 20-04017   Doc# 1   Filed: 04/03/20   Entered: 04/03/20 17:58:15   Page 34 of 71

Labor Code Section 202 requires that all earned wages of an employee who quits without providing seventy two (72) hours advance notice, be paid in full not later than seventy two (72) hours thereafter. Labor Code Section 203 provides that if an employer willfully fails to pay any earned wages of an employee in accordance with Section 202, the wages of such employee shall continue as a penalty from the due date thereof at the same rate until paid, up to thirty days. Plaintiff quit without advance notice on February 8, 2015. Pursuant to Labor Code Section 202, wages were due no later than February 11, 2015. To date, overtime wages remain unpaid, as set forth above.

Defendant's failure to pay all of Plaintiff's final wages in a timely manner was willful within the meaning of Labor Code Section 203 (Title 8, California Code of Regulations, § 13520). "Intentional" as defined by the statute and case law does not mean with evil intent, but simply that the employer knows such wages are due and fails to pay them. Unlike the criminal violations, which may arise under the law for failure to pay wages, the civil penalty assessed under Labor Code Section 203 does not require that the action or omission be premeditated; merely that the action occurred and it was within the employer's control. *Hale v. Morgan* (1978) 22 Cal.3d 388, 149 Cal.Rptr. 375. As employers in California, Defendants are expected to comply with overtime obligations and ensure compliance with the law. Wages have been withheld for a period exceeding thirty days. Therefore, Defendants shall pay Plaintiff the maximum penalty of thirty days' wages at the daily rate of $140.18[1], in the amount of $4,205.40.

\ \ \

\ \ \

\ \ \

---

[1] Throughout his employment, Plaintiff established that he worked a total of 8,667 hours over 738 days, for an average of 11.74 hours per day, with an average rate of $10.30 per hour: 8 Regular hours x $10.30 per hour + 3.74 overtime hours x $15.45= $140.18

Case: 20-04017    Doc# 1    Filed: 04/03/20    Entered: 04/03/20 17:58:15    Page 35 of 71

<u>CONCLUSION</u>

For all of the reasons set forth above, IT IS HEREBY ORDERED that Defendants shall pay Plaintiff the sum of $72,171.52, as follows:

1. $27,461.50 in earned and unpaid regular and overtime wages;

2. $31,450.00 in liquidated damages pursuant to Labor Code Section 1194.2;

3. $9,054.62 in interest pursuant to Labor Code Sections 98.1(c), 1194.2; and,

4. $4,205.40 in penalties pursuant to Labor Code Sections 202 and 203.

Dated: August 25, 2016

Carrie J. Mottau, Hearing Officer

Case: 20-04017    Doc# 1    Filed: 04/03/20    Entered: 04/03/20 17:58:15    Page 36 of 71

<table>
<tr><td colspan="2">

**LABOR COMMISSIONER, STATE O    LIFORNIA**
**Department of Industrial Relations**
**Division of Labor Standards Enforcement**
**P.O. Box 420603**
**San Francisco, CA 94142**
**Tel: (415)703-5300  Fax: (415)703-4130**

</td></tr>
</table>

| LABOR COMMISSIONER, STATE O   LIFORNIA Department of Industrial Relations Division of Labor Standards Enforcement P.O. Box 420603 San Francisco, CA 94142 Tel: (415)703-5300 Fax: (415)703-4130 | |
|---|---|
| **Plaintiff:**  Hoa Phan | |
| **Defendant:** Jaffa City Cafe, a general partnership; Rhainell Madrona, Robert Madrona, and Delia M. Madrona each individually and as general partners of Jaffa City Cafe | |
| **State Case Number** **11 - 47854 EK** | **NOTICE OF PAYMENT DUE** |

You have been served a copy of the Labor Commissioner's Order, Decision or Award.

If the full amount of the sums set forth in the Order, Decision or Award is received by this office within ten (10 ) days of the date the Order, Decision or Award was served upon you, no judgment will be entered in this matter.

Payment must be made by certified check, cashier's check or money order (no other tender will be accepted) made payable to the Plaintiff named in the Order, Decision or Award, and addressed to the Office of the Labor Commissioner at the address shown above.

DATED:   August 25, 2016

*Ellen Kennedy 415-703*
Ellen Kennedy 415    Deputy Labor Commissioner
-703-5307

DLSE 550 (Rev. 1/11)            NOTICE OF PAYMENT DUE         L.C. 98

# EXHIBIT  C



©COPY



| Fill in this information to identify the case: |
| --- |
| Debtor 1    Rhainell A Madrona |
| Debtor 2    Argent M Madrona<br>(Spouse, if filing) |
| United States Bankruptcy Court for the:   Northern District of California |
| Case number   19-42915 |

**FILED**

MAR 0 3 2020

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

## Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

| | |
| --- | --- |
| 1. Who is the current creditor? | Hoa Phan, incorrectly named herein as Hoa Khan<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? _____ |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Panos Lagos, Esq./Law Offices of Panos Lagos<br>Name<br>5032 Woodminster Lane<br>Number    Street<br>Oakland      CA      94602<br>City      State      ZIP Code<br><br>Contact phone (510) 530-4078 x 101<br>Contact email panos@panoslagoslaw.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | **Where should payments to the creditor be sent?** (if different)<br><br>Name<br><br>Number    Street<br><br>City      State      ZIP Code<br><br>Contact phone _____<br>Contact email _____ |
| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____     Filed on _____<br>                                                        MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |

Case: 20-04017    Doc# 1    Filed: 04/03/20    Entered: 04/03/20 17:58:15    Page 39 of 71

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**
☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __1__ __5__ __3__ __5__

7. **How much is the claim?** $_____118,591.21. **Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).
*See Exhibit 1*

8. **What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.
*Judgment for earned and unpaid regular and overtime wages, liquidated damages, interest, and penalties. See Exhibits 2-5.*

9. **Is all or part of the claim secured?**
☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____
**Amount of the claim that is secured:** $_____
**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%
☐ Fixed
☐ Variable

10. **Is this claim based on a lease?**
☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

11. **Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

|  | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  2 / 28 / 2020
            MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Panos Lagos |
|---|---|
|  | First name       Middle name       Last name |
| Title | Attorney for Creditor, HOA PHAN |
| Company | LAW OFFICES OF PANOS LAGOS |
|  | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 5032 Woodminster Lane |
|  | Number     Street |
|  | Oakland         CA      94602 |
|  | City         State     ZIP Code |
| Contact phone | (510) 530-4078 x 101     Email panos@panoslagoslaw.com |

# EXHIBIT 1

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: 61821 | FOR COURT USE ONLY |
|---|---|---|

NAME: Panos Lagos, Esq.
FIRM NAME: Law Offices of Panos Lagos
STREET ADDRESS: 5032 Woodminster Lane
CITY: Oakland　　　　　STATE: CA　　ZIP CODE: 94602
TELEPHONE NO.: (510) 530-4078 x 101　　FAX NO.: (510) 530-4725
E-MAIL ADDRESS: panos@panoslagoslaw.com
ATTORNEY FOR (name): Hoa Phan, Judgment Creditor

**ENDORSED FILED**
SAN MATEO COUNTY

JAN 2 4 2020

Clerk of the Superior Court
By___Jennifer Tanneus___
DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
STREET ADDRESS: 400 County Center, Room A / Civil Division
MAILING ADDRESS: 400 County Center
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME:

PLAINTIFF: Phan v. Jaffa City Cafe, etc., et al.

DEFENDANT: Jaffa City Cafe, a general partnership, et al.

| MEMORANDUM OF COSTS AFTER JUDGMENT, ACKNOWLEDGMENT OF CREDIT, AND DECLARATION OF ACCRUED INTEREST | CASE NUMBER: 16CIV03008 |
|---|---|

1. [X] Postjudgment costs
   a. I claim the following costs after judgment incurred within the last two years *(indicate if there are multiple items in any category):*

|  | | Dates Incurred | Amount |
|---|---|---|---|
| (1) | Preparing and issuing abstract of judgment | | $ |
| (2) | Recording and indexing abstract of judgment | | $ |
| (3) | Filing notice of judgment lien on personal property | | $ |
| (4) | Issuing writ of execution, to extent not satisfied by Code Civ. Proc., § 685.050 *(specify county):* Los Angeles, Alameda, San Francisco | 7/25/2019, 10/8/2019 8/14/2019, 8/15/2019, | $  75.00 |
| (5) | Levying officers fees, to extent not satisfied by Code Civ. Proc., § 685.050 or wage garnishment | 10/9/2019, 10/11/2019 | $  150.00 |
| (6) | Approved fee on application for order for appearance of judgment debtor, or other approved costs under Code Civ. Proc., § 708.110 et seq. | | $ |
| (7) | Attorney fees, if allowed by Code Civ. Proc., § 685.040, § 98.2(k) Labor Code | 11/20/2018 - 1/23/2020 | $  43,125.00 |
| (8) | Other: Amending Judgment　*(Statute authorizing cost):* CCP §§ 187, 1032(a)(1), § 98.2(k) Labor Code | | $  60.00 |
| (9) | Total of claimed costs for current memorandum of costs *(add items (1)–(8))* | | $  43,410.00 |
| b. | All previously allowed postjudgment costs | | $  752.00 |
| c. | Total of all postjudgment costs *(add items a and b)* | | $  44,162.00 |

2. [X] Credits to interest and principal
   a. I acknowledge total payments to date in the amount of: $3,729.05 (including returns on levy process and direct payments). The payments received are applied first to the amount of accrued interest, and then to the judgment principal (including postjudgment costs allowed) as follows: credit to accrued interest $3,729.05 ; credit to judgment principal $0.00
   b. Principal remaining due: The amount of judgment principal remaining due is $118,591.21 . *(See Code Civ. Proc., § 680.300)*

3. [X] Accrued interest remaining due: I declare interest accruing (at the legal rate) from the date of entry or renewal and on balances from the date of any partial satisfactions (or other credits reducing the principal) remaining due in the amount of $19,223.69

4. I am the: [ ] judgment creditor [ ] agent for the judgment creditor [X] attorney for the judgment creditor,
   I have knowledge of the facts concerning the costs claimed above. To the best of my knowledge and belief, the costs claimed are correct, reasonable, and necessary, and have not been satisfied.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: January 24, 2020

PANOS LAGOS, ESQ.
(TYPE OR PRINT NAME)　　　　　　　　　　*Panos Lagos*
　　　　　　　　　　　　　　　　　　(SIGNATURE OF DECLARANT)

**NOTICE TO THE JUDGMENT DEBTOR**
If this memorandum of costs is filed at the same time as an application for a writ of execution, any statutory costs, not exceeding $100 in aggregate and not already allowed by the court, may be included in the writ of execution. The fees sought under this memorandum may be disallowed by the court upon a motion to tax filed by the debtor, notwithstanding the fees having been included in the writ of execution. (Code Civ. Proc., § 685.070(e).) A motion to tax costs claimed in this memorandum must be filed within 10 days after service of the memorandum. (Code Civ. Proc., § 685.070(c).)

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
MC-012 [Rev. September 1, 2016]

**MEMORANDUM OF COSTS AFTER JUDGMENT,
ACKNOWLEDGMENT OF CREDIT, AND DECLARATION
OF ACCRUED INTEREST**

Code of Civil Procedure,
§§ 685.040, 685.070, 685.220
www.courts.ca.gov

| Short Title: Phan v. Jaffa City Cafe, etc., et al. | CASE NUMBER: 16CIV03008 |
|---|---|

## PROOF OF SERVICE

[X] Mail　　[ ] Personal Service

1. At the time of service I was at least 18 years of age and not a party to this legal action.

2. My residence or business address is:
   5032 Woodminster Lane
   Oakland, CA 94602

3. [X] I mailed or personally delivered a copy of the *Memorandum of Costs After Judgment, Acknowledgment of Credit, and Declaration of Accrued Interest* as follows (*complete either a or b*):

   a. [X] Mail, I am a resident of or employed in the county where the mail occurred.
      (1) I enclosed a copy in an envelope AND
         (a) [ ] deposited the sealed envelope with the United States Postal Service with the postage fully prepaid.
         (b) [X] placed the envelope for collection and mailing on the date and at the place shown in items below following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

      (2) The envelope was addressed and mailed as follows:

         (a) Name of person served: SEE ATTACHMENT
         (b) Address on envelope: SEE ATTACHMENT
         (c) Date of mailing: January 24, 2020
         (d) Place of mailing (*city and state*): Oakland, CA

   b. [ ] Personal delivery, I personally delivered a copy as follows.
      (1) Name of person served:
      (2) Address where delivered:
      (3) Date delivered:
      (4) Time delivered:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: January 24, 2020

ALICIA HUBBS
(TYPE OR PRINT NAME)

(SIGNATURE OF DECLARANT)

Case: 20-04017　Doc# 1　Filed: 04/03/20　Entered: 04/03/20 17:58:15　Page 44 of 71

1  <u>Attachment - Proof of Service - Memorandum of Costs After Judgment</u>

2

3  1.    Jaffa City Cafe, a general partnership
7622 El Camino Real, Colma, CA  94014

4  2.    Rhainell Madrona,
aka rhainell-alumism; madrona, aka rhainell A. Madrona, aka Rhainell Alumism Madrona, aka Rhinell Madrona,
5  individually and as a general partner of Jaffa City Cafe
7622 El Camino Real, Colma, CA ·94014
6

7  3.    Rhainell Madrona,
aka rhainell-alumism; madrona, aka rhainell A. Madrona, aka Rhainell Alumism Madrona, aka Rhinell Madrona,
8  individually and as a general partner of Jaffa City Cafe
3109 Pine Street, Antioch, CA 94509-5223

9  4.    Robert Madrona,
aka robert-alumism; madrona, aka Robert Alumism Madrona,
10  individually and as a general partner of Jaffa City Cafe, and
Robert Madrona,
11  individually and dba City Cafe
7622 El Camino Real, Colma, CA  94014
12

13  5.    Robert Madrona,
aka robert-alumism; madrona, aka Robert Alumism Madrona,
14  individually and as a general partner of Jaffa City Cafe, and
Robert Madrona,
15  individually and dba City Cafe
404 Hemlock Avenue, S. San Francisco, CA 94080
16

17  6.    Delia M. Madrona,
aka delia-marron; madrona, aka Delia Marron Madrona,
individually and as a general partner of Jaffa City Cafe, and
18  Delia Madrona,
individually and dba City Cafe
19  7622 El Camino Real, Colma, CA  94014

20  7.    Delia M. Madrona,
aka delia-marron; madrona, aka Delia Marron Madrona,
21  individually and as a general partner of Jaffa City Cafe, and
Delia Madrona,
22  individually and dba City Cafe
404 Hemlock Avenue, S. San Francisco, CA 94080-1603
23

24

25

26  *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, not line numbers):*

27  This page may be used with any Judicial Council form or any other paper filed with the court.                Page _____

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]
ADDITIONAL PAGE
Attach to Judicial Council Form or Other Court Paper
CRC 201, 501

Case: 20-04017   Doc# 1    Filed: 04/03/20   Entered: 04/03/20 17:58:15    Page 45 of 71

# EXHIBIT 2

**LABOR COMMISSIONER, STATE CALIFORNIA**
Department of Industrial Relations
Division of Labor Standards Enforcement
P.O. Box 420603
San Francisco, CA 94142
Tel: (415)703-5300  Fax: (415)703-4130

For County SAN MATEO COUNTY

DEC 2 7 2016

Clerk of the Superior Court

by _____
DEPUTY CLERK

16 - CIV - 03008
ORD
Order
313149

Plaintiff:  Hoa Phan

Court Number
16 CIV 03008

Defendant:  Jaffa City Cafe, a general partnership; Rhainell Madrona, Robert Madrona, and
Delia M. Madrona each individually and as general partners of Jaffa City Cafe

| State Case Number | **ORDER, DECISION OR AWARD OF THE LABOR COMMISSIONER** |
|---|---|
| **11 - 47854 EK** | |

1. The above-entitled matter came on for hearing before the Labor Commissioner of the State of California as follows:

**DATE:** June 28, 2016    ☐ **CONTINUED TO:**

**CITY:** 455 Golden Gate Ave. - 10th floor East, San Francisco, CA

2. IT IS ORDERED THAT:

| $ | | for |
|---|---|---|
| $ | 27,461.50 | for wages  (with lawful deductions) |
| $ | 31,450.00 | for liquidated damages pursuant to Labor Code Section 1194.2 |
| $ | 0.00 | Reimbursable business expenses |
| $ | 9,054.62 | for interest pursuant to Labor Code Section(s) 98.1(c), 1194.2 and/or 2802(b), |
| $ | 4,205.40 | for additional wages accrued pursuant to Labor Code Section 203 as a penalty *and that same shall not be subject to payroll or other deductions.* |
| $ | 0.00 | for penalties pursuant to Labor Code Section 203.1 which *shall not be subject to payroll or other deductions.* |
| $ | 0.00 | other (specify): |
| $ | **72,171.52** | **TOTAL AMOUNT OF AWARD** |

3. The herein Order, Decision or Award is based upon the Findings of Fact, Legal Analysis and Conclusions attached hereto and incorporated herein by reference.

4. The parties herein are notified and advised that this Order, Decision or Award of the Labor Commissioner shall become final and enforceable as a judgment in a court of law unless either or both parties exercise their right to appeal to the appropriate court* within ten (10) days of service of this document. Service of this document can be accomplished either by first class mail or by personal delivery and is effective upon mailing or at the time of personal delivery. If service on the parties is made by mail, the ten (10) day appeal period shall be extended by five (5) days. For parties served outside of California, the period of extension is longer (See Code of Civil Procedure Section 1013). In case of appeal, the necessary filing fee must be paid by the appellant and appellant must, immediately upon filing an appeal with the appropriate court, serve a copy of the appeal request upon the Labor Commissioner. If an appeal is filed by a corporation, a non-lawyer agent of the corporation may file the Notice of Appeal with the appropriate court, but the corporation must be represented in any subsequent trial by an attorney, licensed to practice in the State of California. Labor Code Section 98.2(c) provides that if the party seeking review by filing an appeal to the court is unsuccessful in such appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other party to the appeal and assess such amount as a cost upon the party filing the appeal. An employee is successful if the court awards an amount greater than zero.

PLEASE TAKE NOTICE: Labor Code Section 98.2(b) requires that as a condition to filing an appeal of an Order, Decision or Award of the Labor Commissioner, the employer shall first post a bond or undertaking with the court in the amount of the ODA; and the employer shall provide written notice to the other parties and the Labor Commissioner of the posting of the undertaking. Labor Code Section 98.2(b) also requires the undertaking contain other specific conditions for distribution under the bond. While this claim is before the Labor Commissioner, you are required to notify the Labor Commissioner *in writing* of any changes in your business or personal address within 10 days after any change occurs.

* San Mateo Superior Court
Civil Division-Room A
400 County Center
Redwood City, CA 94063-1655

**LABOR COMMISSIONER, STATE OF CALIFORNIA**

BY: _Carrie Mottau_

Carrie J. Mottau          HEARING OFFICER

**DATED: August 25, 2016**

DLSE 535 (Rev. 1/12)          ORDER, DECISION OR AWARD OF THE LABOR COMMISSIONER          L.C. 98

# BEFORE THE LABOR COMMISSIONER
## OF THE STATE OF CALIFORNIA

HOA PHAN )
                Plaintiff, )     CASE NO. 11-47854 EK
)
vs. )
)     ORDER, DECISION OR AWARD
JAFFA CITY CAFE, a general partnership; )     OF THE LABOR COMMISSIONER
RHAINELL MADRONA, ROBERT MADRONA, )
and DELIA M. MADRONA, each individually )
and as general partners of JAFFA CITY CAFE, )
a general partnership )
                Defendants )
)

## BACKGROUND

Plaintiff filed an initial claim with the Labor Commissioner's office on May 11, 2015. The Complaint alleges Plaintiff is owed:

    1. Unpaid regular and overtime wages for the period of September 19, 2012, to February 8, 2015;

    2. Meal period premiums for the period of September 19, 2012, to February 8, 2015;

    3. Rest period premiums for the period of September 19, 2012, to February 8, 2015;

    4. Liquidated damages pursuant to Labor Code Section 1194.2; and,

    5. Penalties pursuant to Labor Code Section 203.

A hearing was conducted in San Francisco, California, on June 28, 2016, before the undersigned hearing officer designated by the Labor Commissioner to hear this matter. Plaintiff appeared, represented by Mark Franklin, Attorney at Law. Michael Melchin, Attorney at Law, represented Defendants, Rhainell Madrona, Delia Madrona, and Robert Madrona. Daniel Kai Soo Eng appeared as a witness for Plaintiff. Ismet Saateiglu and Rudy Garcia appeared as witnesses on behalf of Defendants.

Case: 20-04017   Doc# 1   Filed: 04/03/20   Entered: 04/03/20 17:58:15   Page 48 of 71

Due consideration having been given to the testimony, documentary evidence, and arguments presented, the Labor Commissioner hereby adopts the following Order, Decision or Award.

FINDINGS OF FACT

In September 2012, two brothers, Rhainell Madrona and Robert Madrona, purchased a coffee shop in Colma, California. Together, along with Robert Madrona's wife, Delia Madrona (hereinafter collectively referred to as the Madrona's), operated Jaffa City Café. According to Plaintiff, he worked as a cook for the previous owners, and the Madrona's continued his employment, beginning September 19, 2012, through February 8, 2015. Robert Madrona initially offered to continue Plaintiff's employment at the rate of $12.00 per hour but, within a week of ownership, he changed Plaintiff's compensation to a fixed salary of $1,500.00 per month. Plaintiff always received payments in cash from Delia Madrona, and neither party kept of any record of the amounts paid to Plaintiff.

While working for the Madrona's, Plaintiff prepared traditional Vietnamese dishes such as Vietnamese coffee, using filters he special ordered from Vietnam, banh mi sandwiches, and pho, as well as other menu items, including BBQ chicken sandwiches. Plaintiff alleged that he arrived at the coffee shop daily at 5:30 a.m., in preparation for opening at 6:00 a.m., and that he worked until 8:30 p.m., seven days per week. The shop started serving food at 8:00 a.m., but Plaintiff reported that he served coffee to customers, and began preparing food at 6:00 a.m. Towards the end of his employment, approximately December 2014, Plaintiff obtained a second job and reduced his hours to 6:00 a.m. to 10:00 a.m., seven days per week, and his monthly salary was reduced to $800.00.

Plaintiff contended that he worked with Rhainell Madrona, Robert Madrona, and Delia Madrona at different times throughout the day. Delia usually arrived around 8:00 a.m., and she regularly prepared the Middle Eastern dishes on the menu, as well as

Page 2

Case: 20-04017    Doc# 1    Filed: 04/03/20    Entered: 04/03/20 17:58:15    Page 49 of 71

her empanadas, and was responsible for the bookkeeping, inventory, and purchasing of supplies. Robert also spent time working in the mid-afternoon, helping serve customers, and purchasing supplies. Rhainell arrived around 2:00 p.m. to help with the afternoon shift, and he closed the store at the end of the day.

At Rhainell's request, Plaintiff attended a training course in food safety on November 28, 2012, the title of the course, as listed on the Certificate of Attendance, was "New Owner Orientation Seminar". Plaintiff reported that completion of this training was required in order for him to continue working at the café. Rhainell attended the training with Plaintiff, and paid the registration fee on Plaintiff's behalf.

According to Plaintiff, for the period of September 19, 2012, through December 31, 2014, he regularly worked 29 overtime hours, and 15 double time hours each week. Beginning January 1, 2015, when Plaintiff reduced his hours, Plaintiff contended that he 4.5 overtime hours each week. However, Plaintiff never received any compensation for overtime hours worked. Throughout his employment, based on his fixed salary, the Madrona's paid Plaintiff for 40 hours of work each week, and a total of $65,230.00. Plaintiff contended that the Madrona's failed to pay him for any hours worked beyond 40 regular hours per week.

Plaintiff also asserted that he never received a meal or rest period throughout his employment. Plaintiff acknowledged that he had the opportunity to eat a quick meal, lasting 10 to 15 minutes, as well as the ability to stand outside and smoke cigarettes, but that customers frequently interrupted him. Plaintiff claimed that he could not leave the store for a meal period, but also later stated that he could leave if he wanted, but that he did not usually have anywhere else to go. On occasion, Plaintiff could use the café computers to communicate with his wife, and, twice per month, Plaintiff had the ability to leave the store to send money to his family, which usually took about one hour. During his employment, September 19, 2012, through February 8, 2015, Plaintiff argued that he worked 816 days without a meal or rest period.

Case: 20-04017    Doc# 1    Filed: 04/03/20    Entered: 04/03/20 17:58:15    Page 50 of 71

Plaintiff quit without notice on February 8, 2015, after Robert Madrona paid him $200.00 for work performed that week.

Daniel Kai Soo Eng, a previous customer of Jaffa City Café, testified that he visited the café on 10 to 12 occasions in 2014, and each time he observed Plaintiff wearing a white apron, performing different tasks, including preparing food, collecting customer payments, serving food, and working behind the counter. Eng explained that Jaffa City Café sold pho, a Vietnamese soup, prepared by Plaintiff, as well as Vietnamese coffee. On one occasion, Eng gave Plaintiff a ride to the nearby BART station so that Plaintiff could deliver some sandwiches to a customer. Eng testified that he offered Plaintiff a job helping on a construction site, and that Plaintiff worked for him on a Monday, his regular day off. Eng believed Robert Madrona, Rhainell Madrona, and Delia Madrona to be the owners of Jaffa City Café.

The Madrona's denied any employment relationship with Plaintiff. Robert Madrona and Rhainell Madrona verified their general partnership, operating Jaffa City Café, however, denied any ownership or partnership interest by Delia Madrona. No written partnership agreement existed, and they have subsequently formed City Café of Colma, LLC, with Robert Madrona and Rhainell Madrona as the only members.

Robert Madrona testified that after purchasing the business in September 2012, he met Plaintiff as a customer. He denied that Plaintiff ever performed any work at the café, but that Plaintiff spent several hours each day using one of the café's free computers. Robert only knew that Plaintiff frequently communicated with his wife in another country using the computer, but had no other personal information about Plaintiff. The café operates four days per week, Tuesday through Friday, and opens at 8:00 a.m. They cannot afford employees, so Robert, Rhainell and Delia run it themselves. Robert argued that the café does not have a cooking facility on site, so Plaintiff could not have cooked soup or BBQ chicken as he described. He denied that the café serves Vietnamese coffee, or that it offered any other traditional Vietnamese cuisine. Robert denied that he ever

Page 4

offered Plaintiff employment, and denied making any payments to Plaintiff. Around February 2015, Plaintiff just stopped coming to the café, and Robert never saw him again.

Delia Madrona reported that she is not an owner or partner of Jaffa City Café, but that she operates the café every day, opening the business at 8:00 a.m., and works until 4:00 p.m., Tuesday through Friday. Delia denied any relationship with Plaintiff, only that she saw him as a customer occasionally. Delia explained that she never paid any attention to customers, so she did not know about how many times she saw Plaintiff, or how frequently, or if he ever ordered any food or coffee, but she did see him using the computer. Delia explained that the café has an oven for reheating things like bread, sandwiches, pizza, or empanadas, but no stove for cooking. According to Delia, the café only serves prepared soup, like Top Ramen, that requires only boiling water. She denied that the café serves any Vietnamese food, including bahn mi or bbq chicken sandwiches, or that she ever paid Plaintiff any amount of money. Delia Madrona testified that she prepared chicken adobo and empanadas at home, and brought them to the café to sell. She also took special orders from customers and friends for these items.

Rhainell Madrona testified that he is a general partner operating Jaffa City Café, with his brother. He regularly works from 3:30 p.m. to 8:30 p.m., with the café closing at 7:00 p.m. Rhainell acknowledged that he knew Plaintiff as a customer at the café, where he purchased coffee and used their computers. Rhainell denied that Plaintiff ever worked at the café. Rhainell believed that Plaintiff spent a lot of time on the computer searching for jobs, and they had conversations about the restaurant industry. As a gesture, Rhainell offered to bring Plaintiff with him to a food safety-training course. Rhainell explained that he thought this training might be useful experience for Plaintiff in securing a job in the food industry. Rhainell confirmed that they attended the training together, he paid for Plaintiff's registration, and drove him to the class, but he denied that the training had anything to do with an employment relationship with Plaintiff.

Case: 20-04017    Doc# 1    Filed: 04/03/20    Entered: 04/03/20 17:58:15    Page 52 of 71

Ismet Saateiglu, customer of Jaffa City Café, testified that he has been a customer of the café for approximately the past two years, and he visits three to four days per week. Saateiglu reported that he has never seen Plaintiff before, at the café, or elsewhere. Saateiglu regularly just ordered coffee or a sandwich, and the café served chicken adobo, but he did not recall Vietnamese coffee, pho, or bahn mi on the menu. Saateiglu usually saw Delia working, but occasionally Robert or Rhainell were present if he visited later in the afternoon. Saateiglu could not recall the café's operating hours specifically, but he believed that the café was closed on Saturdays and Sundays. Based on his observations, Saateiglu gathered that Robert Madrona, Rhainell Madrona, and Delia Madrona were the owners of Jaffa City Café.

Rudy Garcia, property manager, lives in the apartment directly above the café. Garcia testified that he has lived on the premises for 15 years, and, although he did not frequently go in to the downstairs café, he saw Plaintiff at the café about three times per week. He observed Plaintiff using the café computers, or smoking outside for three to four hours each day. Garcia denied that he ever saw Plaintiff performing any work. Even though Garcia did not wake up before 8:00 a.m., he heard noises from downstairs when the café opened, and reported that Delia usually opened the café around 8:00 a.m. According to Garcia, Rhainell closed the café around 7:00 p.m. Occasionally Garcia purchased food at the café, and, according to Garcia, the café only served "American sandwiches", and Middle Eastern and Filipino type foods.

In response, Plaintiff described a credit card fraud incident that occurred at the café on June 24, 2014. Plaintiff cooperated with the police investigation, and he provided the police report, which states, in relevant part, "...Upon our arrival, I met with an employee from the Café, Hoa Am Phan. Phan told me that, "Three school looking kids ran away without paying..."

According to Plaintiff, the Madrona's are Filipino and, other than their Filipino relatives, Plaintiff worked as their only employee. Plaintiff identified himself as

Case 20-04017   Doc# 1   Filed: 04/03/20   Entered: 04/03/20 17:58:15   Page 53 of 71

Vietnamese, and explained that several customer reviews posted on the internet refer to him, or his Vietnamese cooking, establishing the work he did at the café. For example, on July 10, 2014, a customer posted on Yelp, "...The 3 person staff is very friendly. Their white chocolate mocha and Vietnamese coffee is delicious and the chef makes a bomb bbq chicken banh mi sandwich. I think it's the cole slaw that gives it a bit of a sweet kick. I haven't had the pho yet because I'm always ordering the bahn mi..." On December 3, 2014, another customer also posted on Yelp, "This used to be my go to place for gyros in the peninsula. Apparently the ownership changed and it is now run by a Filipino/Vietnamese guy..."

## LEGAL ANALYSIS

Robert Madrona and Rhainell Madrona admittedly operated Jaffa City Café as a general partnership; however, they denied any partnership relationship with Delia Madrona.

A partnership is a form of co-ownership by several persons who together own the business assets and who are personally liable for all business debts. (Corp. Code §16306(a).) Each partner is jointly and severally liable for the debts and obligations of the partnership and each partner is deemed the agent of the partnership in dealing with third persons while carrying on partnership business. Generally, each partner has equal right to participate in the management and control of the business. Robert Madrona, Rhainell Madrona, and Delia Madrona, all managed and controlled the operation of Jaffa City Café. Specifically, Delia Madrona performed bookkeeping, issued payments, and purchased supplies for the business, thus having authority to make financial decisions on behalf of the business. Delia Madrona had the discretion to sell her chicken adobo and empanadas at the café, and gave out business cards listing the café's name and address advertising the sale of her empanadas. Furthermore, Delia Madrona's actions at the café created a presumption of ownership with the café's customers.

Case: 20-04017    Doc# 1    Filed: 04/03/20    Entered: 04/03/20 17:58:15    Page 54 of 71

The preponderance of the evidence in this case requires a finding that Delia Madrona was also a partner in Jaffa City Cafe.

In California, any person rendering service for another is presumed to be an employee. (Labor Code Section 3357.) The burden of overcoming this presumption is on the Defendant raising the argument that the worker was not an employee. In this case, the Madrona's failed to rebut the presumption of employment.

The definition of "employer" for purposes of California's labor laws is set forth in Section 2 of the Industrial Welfare Commission Order. It which provides, in relevant part, that an "employer" is any person who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person.

In *Martinez v. Combs* (2010) 49 Cal.4th 35, the California Supreme court held that "employ" is defined as "(a) to exercise control over the wages, hours, or working conditions or (b) to suffer or permit to work or (c) to engage, thereby creating a common law employment relationship."

The Madrona's argued that Plaintiff was a customer, not an employee, however, the totality of the credible evidence and testimony failed to support that argument. They denied his presence at the café as employment, instead, alleged he spent over two years, and upwards of 12 to 16 hours per week, drinking coffee, and using their computers. Plaintiff presented persuasive evidence that customers, and the public, acknowledged him as cooking and serving customers at Jaffa City Café. Statements by third parties, albeit unverified, gave significant reason to believe that the café served some Vietnamese cuisine, as corroborated by Plaintiff and Eng's credible testimony. The Madrona's statements that no such food was served was disingenuous. According to Delia, she hardly noticed Plaintiff, stating she did not pay much attention to the customers, even one that was present in a small coffee shop almost every day it operated. Rhainell supposedly developed such a relationship with Plaintiff that he pitied Plaintiff, and

Case: 20-04017    Doc# 1    Filed: 04/03/20    Entered: 04/03/20 17:58:15    Page 55 of 71

offered Plaintiff transportation and payment of registration fees for Plaintiff to attend a food safety course specifically designed for "New Owners", a course that the City requires of all people handling food to serve to the public. Neither testimony was plausible. Plaintiff performed tasks under the direction of Robert Madrona, Delia Madrona, and Rhainell Madrona, Plaintiff received payment at a rate dictated by Robert Madrona, and was paid wages by Delia Madrona. The preponderance of the evidence in this case requires a finding that Plaintiff was not a customer of Jaffa City Café. Rather, he was an employee and was entitled to the protections of the Labor Code and Wage Order. For the reasons set forth above, Robert Madrona, an individual, Delia Madrona, an individual, and Rhainell Madrona, an individual (collectively referred to herein as "Defendants") are jointly liable and severally liable as general partners of Jaffa City Café and as Plaintiff's employers.

Defendants were subject to the requirements of Industrial Welfare Commission Order 5-2001 (the Order) which requires the following:

- Payment of overtime (one and one-half times the regular hourly rate) for hours worked in excess of eight hours per day or 40 hours per week or the first eight hours of the seventh consecutive workday of the workweek.

- Payment of double the regular hourly rate for hours worked in excess of twelve hours per workday or eight hours on the seventh consecutive workday of the workweek.

Section 7 of the Order further requires that employers maintain "accurate information with respect to each employee including ... (3) Time records showing when the employee begins and ends each work period. ... (4) Total wages paid each payroll period, including value of board, lodging, or other compensation actually furnished to the employee. (5) Total hours worked in the payroll period and applicable rates of pay. This information shall be made readily available to the employee upon reasonable request." (Wage Order No. 5, §7.) Where the employer has failed to maintain records as required by law, an employee has met his burden by raising an inference that the amount

Case: 20-04017    Doc# 1    Filed: 04/03/20    Entered: 04/03/20 17:58:15    Page 56 of 71

and extent of his working hours was just and reasonable. The burden then shifts to the employer to either produce evidence that reflects the precise amount of work performed or that negates the reasonableness of the inference drawn from the employee's evidence. If the employer fails to meet his burden, the court may award damages to the employee, even if the amount is only approximate. (*Hernandez v. Mendoza* (1988) 199 Cal. App. 3d 721, citing *Anderson, supra*, 328 U.S. at 687.)

In this case, neither Defendants nor Plaintiff kept records of Plaintiff's hours worked. The parties disputed the café's hours and days of operation, and Plaintiff based his claim on an allegation that he predominately worked 15 hours per day, 7 days per week, less 4 holidays per year, without time off for vacation, or sick time. Credible witness testimony established that Plaintiff had at least one day off per week, and credible evidence established that the business opened at 7:00 a.m., with Rhainell Madrona closing the café each evening sometime between 7:00 p.m. and 8:30 p.m. Defendants negated the reasonableness of Plaintiff's estimated hours worked, however, they failed to supply any practical accounting of Plaintiff's actual hours worked. Absent the existence of any reliable records establishing Plaintiff's hours worked, the preponderance of the evidence suggests that Plaintiff worked from 7:00 a.m. to 7:00 p.m., 6 days per week, for the period of September 19, 2012, through December 31, 2014. From January 1, 2015, through February 8, 2015, Plaintiff worked from 7:00 a.m. to 10:00 a.m., six days per week.

The salary paid to a non-exempt salaried employee only covers the forty non-overtime hours of the workweek. It does not serve to compensate the worker for any overtime hours (*Skyline Homes v. DIR* (1985) 165 Cal.App.3d 239). Pursuant to Labor Code Section 515 (d), a weekly salary must be divided by the maximum allowable non-overtime hours, 40, to establish a regular hourly rate of pay, which is then the basis for all overtime calculations. Plaintiff's initial rate of pay was $12.00 per hour. For the period of September 26, 2012, through December 31, 2014, Plaintiff earned a salary of $1,500.00 per

Case: 20-04017    Doc# 1    Filed: 04/03/20    Entered: 04/03/20 17:58:15    Page 57 of 71

month, the equivalent of $8.65 per hour.[1] Finally, for the period of January 1, 2015, through February 8, 2015, Plaintiff earned a monthly salary of $800.00 for part time work, the equivalent of $10.26 per hour[2]

Throughout his employment, Plaintiff earned $92,691.50, as follows:

September 19, 2012, to September 25, 2012:
48 regular hours x $12.00 per hour + 24 overtime hours x $18.00 per hour;

September 26, 2012, to June 30, 2014:
3,640 regular hours x $8.65 per hour + 2,912 overtime hours x $12.98 per hour;

July 1, 2014, to December 31, 2014:
1,080 regular hours x $9.00 per hour[3] + 864 overtime hours x $13.50 per hour; and,

January 1, 2015, to February 8, 2015: (5.5 weeks)
99 hours x $10.26 per hour

Plaintiff established that he received payments from Defendants totaling $65,230.00. Therefore, Plaintiff shall recover from Defendants the balance of earned and unpaid wages of $27,461.50.

Labor Code Section 1194.2(a) states as follows:
In any action under Section 98, 1193.6, or 1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. Nothing in this subdivision shall be construed to authorize the recovery of liquidated damages for failure to pay overtime compensation.

Defendants were required to pay Plaintiff the applicable California minimum wage for each and every hour he worked. Defendants failed to meet their minimum wage obligations on several occasions throughout Plaintiff's employment, and Plaintiff is entitled to recover $31,450.00 in liquidated damages pursuant to Labor Code Section

---

[1] $18,000.00 per year/52 weeks/5 days/8 hours= $8.65 per hour.
[2] During this period, Plaintiff received $800.00 per month and worked 18 hours per week.
[3] Effective July 1, 2014, the California minimum wage rate was $9.00 per hour.

Case: 20-04017   Doc# 1   Filed: 04/03/20   Entered: 04/03/20 17:58:15   Page 58 of 71

1194.2, determined as follows.

For the period of September 19, 2012, through June 30, 2014, the California minimum wage rate was $8.00 per hour. Plaintiff worked 3,688 regular hours, and he received payment of these hours at the rate of $8.65 per hour, thus Defendants met their minimum wage obligation for regular hours during this period.

However, because a fixed salary is only deemed to have compensated a non-exempt employee for regular hours worked, Plaintiff worked 2,912 overtime hours during this period for which he received no compensation whatsoever. Therefore, Plaintiff is entitled to receive liquidated damages pursuant to Labor Code Section 1194.2 for unpaid minimum wages during this period of 2,912 hours at the rate of $8.00 per hour, $23,296.00.

For the period of July 1, 2014, through December 31, 2014, the minimum wage rate was $9.00 per hour. Plaintiff worked 1,080 regular hours and received payment of all regular hours worked at the rate of $8.65 per hour, a $0.35 per hour shortfall. Therefore, Plaintiff shall recover 1,080 hours at the rate of $0.35 per hour, $378.00, in liquidated damages for regular hours worked during this period.

During this same period, Plaintiff worked 864 overtime hours, by which, because of his fixed salary, Plaintiff received no compensation. Therefore, Plaintiff shall recover liquidated damages for overtime hours worked during this period of 864 hours at the rate of $9.00 per hour, $7,776.00.

For the period of January 1, 2015, through February 8, 2015, Plaintiff worked 99 hours and received payment of $1,000.00, for a rate of $10.10, above the minimum wage rate. Therefore, Defendants met their minimum wage obligation during this period, and no liquidated damages are due.

Section 11 (Meal Periods) of the Order, provides that:

• No employer shall employ any person for a work period of more than five hours without a meal period of not less than 30 minutes, except that when a work period

Case: 20-04017    Doc# 1    Filed: 04/03/20    Entered: 04/03/20 17:58:15    Page 59 of 71

of not more than six hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee.

Section 12 of the Order provides:

- Every employer shall authorize and permit all employees to take rest periods, which in so far as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one half (3 1/2) hours. Authorized rest period time shall be counted, as hours worked, for which there shall be no deduction from wages.

Employers must provide meal and rest periods, but they need not ensure the employees take them. Employers cannot impede, discourage, or dissuade employees from taking meal or rest periods. Plaintiff, as the party asserting the affirmative, has the burden of proof including the initial burden of going forward and the burden of persuasion by a preponderance of the evidence. Plaintiff has presented no evidence of sufficient substantiality to support his claim that he was denied meal or rest periods; Plaintiff smoked cigarettes and used Defendants' computers to communicate with his wife via the internet. Plaintiff's testimony supports a finding that Plaintiff received meal breaks, as evidenced by his ability to leave the café when he needed to send money to his family. Simply because Plaintiff chose not to leave the café, or did not have anywhere else to be, does not indicate that Defendants prevented him from leaving, or receiving a meal period pursuant to the Order. Therefore, Plaintiff's claim for meal and rest period premiums pursuant to Labor Code Section 226.7 is denied.

Labor Code Sections 98.1(c) and 1194.2, provide that all awards granted pursuant to this hearing shall accrue interest on all due and unpaid wages from the date that said wages became due until they are paid. Therefore, Plaintiff is entitled to $9,054.62 in interest accrued to date on the unpaid balance of wages and liquidated damages.

Case: 20-04017    Doc# 1    Filed: 04/03/20    Entered: 04/03/20 17:58:15    Page 60 of 71

Labor Code Section 202 requires that all earned wages of an employee who quits without providing seventy two (72) hours advance notice, be paid in full not later than seventy two (72) hours thereafter. Labor Code Section 203 provides that if an employer willfully fails to pay any earned wages of an employee in accordance with Section 202, the wages of such employee shall continue as a penalty from the due date thereof at the same rate until paid, up to thirty days. Plaintiff quit without advance notice on February 8, 2015. Pursuant to Labor Code Section 202, wages were due no later than February 11, 2015. To date, overtime wages remain unpaid, as set forth above.

Defendant's failure to pay all of Plaintiff's final wages in a timely manner was willful within the meaning of Labor Code Section 203 (Title 8, California Code of Regulations, § 13520). "Intentional" as defined by the statute and case law does not mean with evil intent, but simply that the employer knows such wages are due and fails to pay them. Unlike the criminal violations, which may arise under the law for failure to pay wages, the civil penalty assessed under Labor Code Section 203 does not require that the action or omission be premeditated; merely that the action occurred and it was within the employer's control. *Hale v. Morgan* (1978) 22 Cal.3d 388, 149 Cal.Rptr. 375. As employers in California, Defendants are expected to comply with overtime obligations and ensure compliance with the law. Wages have been withheld for a period exceeding thirty days. Therefore, Defendants shall pay Plaintiff the maximum penalty of thirty days' wages at the daily rate of $140.18[1], in the amount of $4,205.40.

\ \ \

\ \ \

\ \ \

---

[1] Throughout his employment, Plaintiff established that he worked a total of 8,667 hours over 738 days, for an average of 11.74 hours per day, with an average rate of $10.30 per hour: 8 Regular hours x $10.30 per hour + 3.74 overtime hours x $15.45= $140.18

Page 14

## CONCLUSION

For all of the reasons set forth above, IT IS HEREBY ORDERED that Defendants shall pay Plaintiff the sum of $72,171.52, as follows:

1. $27,461.50 in earned and unpaid regular and overtime wages;

2. $31,450.00 in liquidated damages pursuant to Labor Code Section 1194.2;

3. $9,054.62 in interest pursuant to Labor Code Sections 98.1(c), 1194.2; and,

4. $4,205.40 in penalties pursuant to Labor Code Sections 202 and 203.

Dated: August 25, 2016

Carrie J. Mottau, Hearing Officer

Page 15

<table>
<tr>
<td>

**LABOR COMMISSIONER, STATE O    LIFORNIA**
**Department of Industrial Relations**
**Division of Labor Standards Enforcement**
**P.O. Box 420603**
**San Francisco, CA 94142**
**Tel: (415)703-5300  Fax: (415)703-4130**

</td>
</tr>
</table>

Plaintiff:  Hoa Phan

Defendant:  Jaffa City Cafe, a general partnership; Rhainell Madrona, Robert Madrona, and Delia M. Madrona each individually and as general partners of Jaffa City Cafe

| State Case Number | NOTICE OF PAYMENT DUE |
|---|---|
| **11 - 47854 EK** | |

You have been served a copy of the Labor Commissioner's Order, Decision or Award.

If the full amount of the sums set forth in the Order, Decision or Award is received by this office within ten (10 ) days of the date the Order, Decision or Award was served upon you, no judgment will be entered in this matter.

Payment must be made by certified check, cashier's check or money order (no other tender will be accepted) made payable to the Plaintiff named in the Order, Decision or Award, and addressed to the Office of the Labor Commissioner at the address shown above.

DATED:  August 25, 2016

*Ellen Kennedy 415-703*
Ellen Kennedy 415    Deputy Labor Commissioner
-703-5307

DLSE 550 (Rev. 1/11)                    NOTICE OF PAYMENT DUE               L.C. 98

# EXHIBIT 3

LABOR COMMISSIONER, STATE CALIFORNIA
Department of Industrial Relations
Division of Labor Standards Enforcement
P.O. Box 420603
San Francisco, CA 94142
Tel: (415)703-5300  Fax: (415)703-4130

(For Court use only)

FILED
SAN MATEO COUNTY

DEC 2 7 2016

Clerk of the Superior Court

16—CIV—03008
RQF
Request Filed
313140

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF __San Mateo county__

__San Mateo__                          JUDICIAL DISTRICT

PLAINTIFF:
    Hoa Phan

DEFENDANT: Jaffa City Cafe, a general partnership; Rhainell Madrona, Robert Madrona, and Delia M. Madrona each individually and as general partners of Jaffa City Cafe

Cou **16CIV03008**

| STATE CASE NUMBER | REQUEST THAT CLERK ENTER JUDGMENT AND JUDGMENT ON FINAL |
|---|---|
| 11 - 47854 EK | ORDER, DECISION OR AWARD OF THE LABOR COMMISSIONER |

## REQUEST THAT CLERK ENTER JUDGMENT

The Order, Decision or Award of the Labor Commissioner has become final and the clerk is requested to enter judgment immediately in conformity with the accompanying certified copy.

LABOR COMMISSIONER, STATE OF CALIFORNIA     BY _Carrie Mottau_

**DATED:**   December 15, 2016                     Carrie J. Mottau                     DEPUTY

## JUDGMENT

A certified copy of a final Order, Decision or Award of the Labor Commissioner has been filed with this court. Judgment therefore is entered as follows:

(1) $  __27,461.50__   for wages and expenses pursuant to Labor Code Section(s) 98.1 and/or 2802;

(2) $  __31,450.00__   for liquidated damages pursuant to Labor Code Section 1194.2;

(3) $  __9,054.62__   interest pursuant to Labor Code Section(s) 98.1(c), 1194.2 and/or 2802(b);

(4) $  __4,205.40__   for additional wages accrued pursuant to Labor Code Section 203 as a penalty

(5) $  __0.00__   for penalties pursuant to Labor Code Section 203.1.

(6) $  __0.00__   other  (specify):

(7) $  __72,171.52__   **Total Amount of Plaintiff's Award**

(8) $  __1,807.69__   for post hearing interest pursuant to Labor Code Section(s) 98.1(c), 1194.2 and/or 2802(b);

(9) $  __450.00__   for filing fee, pursuant to Labor Code Section 101, et. seq.

(10) $  __74,429.21__   **Total Amount of Judgment**

### DEC 2 7 2016

I certify this to be a true copy of the judgment entered on _____ ; in Judgment book _____ at page _____ or microfilm, pursuant to CCP 668.5.

RODINA M. CATALANO
Clerk, by _____ , Deputy Clerk

DLSE 545(2001) (Rev. 1/12)        REQUEST THAT CLERK ENTER JUDGMENT        L.C. 98

**EXHIBIT 4**

ENDORSED FILED
SAN MATEO COUNTY

AUG 0 5 2019

Clerk of the Superior Court
By ___Jennifer Tanneus___
DEPUTY CLERK

Panos Lagos, Esq. / SBN 61821
LAW OFFICES OF PANOS LAGOS
5032 Woodminster Lane
Oakland, CA  94602
Tel. (510) 530-4078
Fax (510) 530-4725
e-mail: panos@panoslagoslaw.com

Attorney for Plaintiff and Judgment Creditor,
HOA PHAN

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO

UNLIMITED JURISDICTION

| | |
|---|---|
| HOA PHAN,<br><br>          Plaintiff,<br><br>v.<br><br>JAFFA CITY CAFE, a general partnership;<br>RHAINELL MADRONA, individually and as<br>general partners of JAFFA CITY CAFE,<br>ROBERT MADRONA, individually and as<br>general partners of JAFFA CITY CAFE,<br>DELIA M. MADRONA, individually and as<br>general partners of JAFFA CITY CAFE,<br><br>          Defendants, | Case No.: 16CIV03008<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION TO AMEND JUDGMENT |

Plaintiff's Motion to Amend Judgment came on for hearing before the Honorable Leland Davis, III, in Department 1, Courtroom 4C, 400 County Center, Redwood City, CA, 94063, on July 25, 2019. Having considered the evidence and arguments of the parties, and good cause appearing therefor,

IT IS ORDERED that the Judgment entered herein on December 27, 2016, be, and is hereby, amended to include aliases ("aka") of the already named Defendants as follows:

1. Rhainell Madrona,

    aka rhainell-alumism; madrona,

    aka rhainell A. Madrona,

    aka Rhainell Alumism Madrona,

    aka Rhinell Madrona,

ORDER GRANTING MOTION TO AMEND JUDGMENT          - 1 --
*Phan v. Jaffa City Cafe, etc., et al,*
Case No.: 16CIV03008

individually and as a general partner of Jaffa City Café

    2. Robert Madrona,

        aka robert-alumism; madrona,

        aka Robert Alumism Madrona,

        individually and as a general partner of Jaffa City Café

    3. Delia M. Madrona,

        aka delia-marron; madrona,

        aka Delia Marron Madrona,

        individually and as a general partner of Jaffa City Café.


IT IS SO ORDERED.

Dated: AUG 02 2019 _____

                              **LELAND DAVIS, III**

                            HONORABLE LELAND DAVIS, III
                            JUDGE OF THE SUPERIOR COURT

ORDER GRANTING MOTION TO AMEND JUDGMENT        - 2 -
*Phan v. Jaffa City Cafe, etc., et al.*
Case No.: 16CIV03008

# EXHIBIT 5



1  **Panos Lagos, Esq. / SBN 61821**
   **LAW OFFICES OF PANOS LAGOS**
2  5032 Woodminster Lane
   Oakland, CA 94602
3  Tel. (510) 530-4078
   Fax (510) 530-4725
4  e-mail: panos@panoslagoslaw.com

5  Attorney for Plaintiff and Judgment Creditor,
   HOA PHAN
6

FILED
SAN MATEO COUNTY

SEP 2 3 2019

Clerk of the Superior Court
By _____
        DEPUTY CLERK

7          SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO

8                          UNLIMITED JURISDICTION

9
   HOA PHAN,                              )   Case No.: 16CIV03008
10                                        )
               Plaintiff,                 )   [Proposed] ORDER GRANTING
11                                        )   PLAINTIFF'S MOTION TO [FURTHER]
   v.                                     )   AMEND JUDGMENT
12                                        )
   JAFFA CITY CAFE, a general partnership;)
13 RHAINELL MADRONA, individually and as  )   Date:  9/11/2019
   general partners of JAFFA CITY CAFE,   )   Time:  9:00 a.m.
14 ROBERT MADRONA, individually and as    )   Dept.: Law and Motion
   general partners of JAFFA CITY CAFE,   )
15 DELIA M. MADRONA, individually and as  )
   general partners of JAFFA CITY CAFE,   )
16                                        )
               Defendants,               )
17                                        )

18         Plaintiff's Motion to Amend Judgment came on for hearing before the Honorable Leland

19 Davis, III, in Department 1, Courtroom 4C, of the above-entitled Court located at 400 County

20 Center, Redwood City, CA, 94063, on September 11, 2019. Having considered the evidence and

21 arguments of the parties, and good cause appearing therefor,

22         IT IS ORDERED that the Judgment entered herein on December 27, 2016, be, and is

23 hereby, further amended to add the following names as a Judgment Debtors:

24             1.  Robert Madrona,

25                 individually and dba

26                 City Cafe

27 ///

28 ///

[Proposed] ORDER GRANTING MOTION TO [FURTHER] AMEND JUDGMENT
*Phan v. Jaffa City Cafe, etc., et al.*
Case No.: 16CIV03008                                              - 1 –

1      2.   Delia Madrona,

2            individually and dba

3            City Cafe

4

5      IT IS SO ORDERED.

6

7   Dated: **SEP 2 0 2019**

8                                        HONORABLE LELAND DAVIS, III
                                         JUDGE OF THE SUPERIOR COURT
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[Proposed] ORDER GRANTING MOTION TO [FURTHER] AMEND JUDGMENT
*Phan v. Jaffa City Cafe, etc., et al.*
Case No.: 16CIV03008                                        – 2 –